# EXHIBIT B

# STATE OF NORTH CAROLINA

_____ MECKLENBURG _____ County

| | |
|---|---|
| *Name And Address Of Plaintiff 1* | |
| TONIA WILLIAMS | |

File No.

**25CV001882-590**

In The General Court Of Justice
☐ District ☒ Superior Court Division

## GENERAL
## CIVIL ACTION COVER SHEET

☒ INITIAL FILING  ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

### VERSUS

| |
|---|
| *Name And Address Of Defendant 1* |
| PHH MORTGAGE CORPORATION, d/b/a PHH MORTGAGE SERVICES |

*Summons Submitted*  ☒ Yes  ☐ No

*Name And Address Of Defendant 2*

*Summons Submitted*  ☐ Yes  ☐ No

*Name And Address Of Attorney Or Party, If Not Represented*
*(complete for initial appearance or change of address)*
Scott C. Harris
Milberg Coleman Bryson Phillips Grossman, PLLC
900 W. Morgan St.
Raleigh, NC 27603

| *Telephone No.* | *Cellular Telephone No.* |
|---|---|
| 919-600-5003 | 919-816-7656 |

| *NC Attorney Bar No.* | *Attorney Email Address* |
|---|---|
| 35328 | sharris@milberg.com |

☒ Initial Appearance in Case  ☐ Change of Address

| *Name Of Firm* | *Fax No.* |
|---|---|
| Milberg Coleman Bryson Phillips Grossman, PLLC | 919-600-5035 |

*Counsel For*
☒ All Plaintiffs  ☐ All Defendants  ☐ Only: *(list party(ies) represented)*

---

☒ Jury Demanded In Pleading  ☐ Complex Litigation  ☐ Stipulate to Arbitration

### TYPE OF PLEADING

*(check all that apply)*

| | |
|---|---|
| ☐ Amend (AMND) | ☐ Failure To State A Claim (FASC) |
| ☐ Amended Answer/Reply (AMND-Response) | ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR) |
| ☐ Amended Complaint (AMND) | ☐ Improper Venue/Division (IMVN) |
| ☐ Assess Costs (COST) | ☐ Including Attorney's Fees (ATTY) |
| ☐ Answer/Reply (ANSW-Response) *(see Note)* | ☐ Intervene (INTR) |
| ☐ Change Venue (CHVN) | ☐ Interplead (OTHR) |
| ☒ Complaint (COMP) | ☐ Lack Of Jurisdiction (Person) (LJPN) |
| ☐ Confession Of Judgment (CNFJ) | ☐ Lack Of Jurisdiction (Subject Matter) (LJSM) |
| ☐ Consent Order (CONS) | ☐ Modification Of Child Support In IV-D Actions (MSUP) |
| ☐ Consolidate (CNSL) | ☐ Notice Of Dismissal With Or Without Prejudice (VOLD) |
| ☐ Contempt (CNTP) | ☐ Petition To Sue As Indigent (OTHR) |
| ☐ Continue (CNTN) | ☐ Rule 12 Motion In Lieu Of Answer (MDLA) |
| ☐ Compel (CMPL) | ☐ Sanctions (SANC) |
| ☐ Counterclaim (CTCL) *Assess Court Costs* | ☐ Set Aside (OTHR) |
| ☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs* | ☐ Show Cause (SHOW) |
| ☐ Dismiss (DISM) *Assess Court Costs* | ☐ Transfer (TRFR) |
| ☐ Exempt/Waive Mediation (EXMD) | ☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL) |
| ☐ Extend Statute Of Limitations, Rule 9 (ESOL) | ☐ Vacate/Modify Judgment (VCMD) |
| ☐ Extend Time For Complaint (EXCO) | ☐ Withdraw As Counsel (WDCN) |
| ☐ Failure To Join Necessary Party (FJNP) | ☐ Other *(specify and list each separately)* |

---

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

Electronically Filed Date: 2/14/2025 9:07 AM Mecklenburg County Clerk of Superior Court
AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

| CLAIMS FOR RELIEF |
|---|

| | | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) | ☐ Limited Driving Privilege - Out-Of-State | ☐ Product Liability (PROD) |
| ☐ Appointment Of Receiver (APRC) |    Convictions (PLDP) | ☐ Real Property (RLPR) |
| ☐ Attachment/Garnishment (ATTC) | ☐ Medical Malpractice (MDML) | ☐ Specific Performance (SPPR) |
| ☐ Claim And Delivery (CLMD) | ☐ Minor Settlement (MSTL) | ☒ Other *(specify and list each separately)* |
| ☐ Collection On Account (ACCT) | ☐ Money Owed (MNYO) | 1. Violations of the Fair Debt Collection Practices Act |
| ☐ Condemnation (CNDM) | ☐ Negligence - Motor Vehicle (MVNG) | 2. Violations of the NC Debt Collection Act |
| ☐ Contract (CNTR) | ☐ Negligence - Other (NEGO) | 3. Violations of the NC Collection Agency Act |
| ☐ Discovery Scheduling Order (DSCH) | ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN) | 4. Negligent Misrepresentation |
| ☐ Injunction (INJU) | ☐ Possession Of Personal Property (POPP) | |

| Date | Signature Of Attorney/Party |
|---|---|
| 01/13/2025 | */s/ Scott C. Harris* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)    ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR CIVIL COURT
CASE No.:

TONIA WILLIAMS, On Behalf of
Herself and All Others Similarly
Situated,

        Plaintiff,

v.

PHH MORTGAGE CORPORATION,
d/b/a PHH MORTGAGE SERVICES,

        Defendant.

**COMPLAINT**

**CLASS ACTION**

**JURY DEMAND**

Plaintiff Tonia Williams ("Williams" or "Plaintiff"), on behalf of herself and all others similarly situated, files this class action complaint against PHH Mortgage Corporation d/b/a Mortgage Services ("PHH" or "Defendant") and states:

## NATURE OF THE ACTION

1.    This is a consumer protection action brought by Plaintiff and others similarly situated to obtain redress from PHH's systematic use of unlawful and unfair debt collection practices to collect upon residential consumer mortgage loans.

2.    Specifically, during the relevant time period, PHH sent borrowers form letters alleging that the borrowers are in default on their mortgages and that the failure to immediately make a ***full and complete*** payment of all arrearages will result in immediate acceleration of their loan.

3.    The form letter has been distributed across the nation, including a form

1

letter sent out to citizens and residents of the state of North Carolina (hereinafter referred to as the "Final Letter(s)"). A copy of a Final Letter materially similar to those sent to all North Carolina putative class members is attached as **Exhibit A** to this Complaint.

4.     The Final Letter presents a false ultimatum: pay the entire balance of arrearages immediately or face acceleration.

5.     The Final Letters include the below representations:

In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 10/04/2024, via the addresses or methods listed on the payment remittance information section included in this notice. Please be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement, in addition to the overdue amount on the mortgage account. You have the right to reinstate the account after acceleration subject to the terms of the mortgage and subject to applicable state law. Any payment to reinstate the mortgage after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received after acceleration that are less than the amount required to reinstate the mortgage may be returned, and may not stop any foreclosure proceedings already begun on the Property. This amount represents the total amount required to bring the account current as of the date of this letter. If other amounts are advanced on the account or if the next payment due date occurs on or before the submission of the total amount required to cure the default, those amounts will remain on the account until paid. If certain amounts are not collected to reinstate the account, then those amounts will remain due on the account until paid.

Failure to cure the default on or before the date specified in this Notice may result in acceleration of the sums secured by the Mortgage Documents and sale of the Property. Upon acceleration, the total amount will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including, but not limited to, reasonable attorney's fees and costs. A customer has the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense to acceleration and sale.

Please be advised if the account is not brought current within 45 days of the date of this letter or one of the alternatives to foreclosure discussed in this letter is not elected, the account may be subject to foreclosure proceedings commencing 45 days from the date of this Notice and may result in the sale of the property.

6.     None of the foregoing statements are consistent with a) PHH's internal policies regarding acceleration and foreclosure; or b) federal law regarding referring matters to attorneys for foreclosure.

2

7.     Thus, PHH's representation that failure to immediately pay all arrearages will result in immediate acceleration of the loan is false, misleading, and unfairly coercive.

8.     This false and deceptive ultimatum in the Final Letter contradicts PHH's actual policy to *never* accelerate a loan so long as any payment sufficient to bring the loan less than 45 days delinquent is made prior to the expiration date set forth in the Final Letter.

9.     The Final Letters sent by PHH to Plaintiff and others similarly situated is a false and misleading threat of acceleration and foreclosure designed to intimidate borrowers into making payments to PHH that are beyond their means and beyond what is necessary to avoid acceleration and save their homes from foreclosure.

10.    This action is brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

11.    This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all borrowers to whom PHH has or will send one or more Final Letters pursuant to PHH's standardized policies and procedures during the applicable statute of limitations period in violation of state and federal law set forth herein.

## JURISIDICTION AND VENUE

12.    Pursuant to N.C.G.S. § 1-75.4, this Court has personal jurisdiction over

3

Defendant. The injuries herein occurred in this state, and, at the time of those injuries, Defendant solicited and performed business activities within this state.

13.    Venue is proper in this forum pursuant to N.C.G.S. §§ 1-82 because a substantial portion of the wrongful acts giving rise to this Complaint occurred in this county, and because Plaintiff resides in this county.

## PARTIES

14.    Plaintiff is a citizen and resident of Mecklenburg County, North Carolina.

15.    PHH is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, with a principal place of business in Mount Laurel, New Jersey.

16.    PHH is regularly engaged in the business of collecting debt in the State of North Carolina.

17.    PHH frequently acts as a "debt collector" as that term is defined by 15 U.S.C. §1692a (6), including with regard to Plaintiff's mortgage loan because, upon information and belief, PHH obtained the servicing rights while in a state of default.

18.    Alternatively, PHH is a "collection agency" as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15.

19.    PHH is regularly engaged in the business of collecting debt in the State of North Carolina.

20.    PHH's employees, affiliates, directors, agents, and attorneys act under

4

the direction and supervision of PHH and, therefore, PHH is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of *respondeat superior*.

## **FACTUAL ALLEGATIONS**

21.     Plaintiff is an owner and resident of a home located at ████████ ████ ████ Charlotte, North Carolina 28212-8439 ("Home").

22.     On or about July 29, 2005 Plaintiff obtained a mortgage subject to a Security Instrument with the original "Lender," Mortgage Lenders Network USA, Inc., for the purchase of her residence.

23.     Lenders, often immediately upon the closing of the loan, will package pools of loans to be sold as a security. When that occurs, the owner of the Loan is generally a corporate entity, often referred to as a special purpose entity or special purpose vehicle (an "SPV"). The sole purpose of an SPV in this context is to acquire and hold a portfolio of loans which can be transferred among investors.

24.     The SPV will often 'assign' the ownership rights to a related corporate entity or trust for the purpose of acting on behalf of the owner because the successor in interest SPV does not act; it only exists to hold a portfolio of loans.

25.     In this case, it appears that the SPV successor in interest to the loan is "RASC 2005-KS9" which has assigned their rights to U.S. Bank National Association as trustee. *See* Ex. C.

5

26.     The servicing of a mortgage loan is separate from the ownership of a mortgage loan. Although lenders sometimes service loans themselves, many lenders utilize a mortgage servicing company to service the debt as the "Loan Servicer." This is particularly common where loans are pooled and sold to an SPV following the closing of the loan.

27.     Loan Servicers have a contractual relationship with the Lender to perform their primary responsibilities of collection of mortgage payments from the Plaintiff and distributing their payments to, *inter alia*, the Lender or other investors, tax authorities, and insurance companies.

28.     The ownership rights to a Mortgage can be sold, transferred, or assigned without notice to the borrower and, when this occurs, the Loan Servicer may change. Plaintiff's Mortgage, for example, specifically contemplates this possibility:

> The Note, or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer")…There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.

**Exhibit B**, ¶ 20.

29.     Loan Servicers acquire the servicing rights to an SPV's portfolio of loans through a Master Servicing Agreement with the owner or its assigns. Those rights are typically for a definite term. And even if the Lender sells or assigns the

6

loan portfolio to another party, the rights of the Loan Servicer continue after the loan is assigned to another Lender.

30. Oftentimes, Loan Servicers will have a contractual relationship with another entity to actually perform the Loan Servicers' servicing responsibilities (referred to as a "Loan Sub-Servicer.")

31. The rights that the Loan Servicers are provided are inherently limited by the contract with the Lender—the Loan Servicer is not a successor in interest with respect to the Lender nor is the Loan Servicer assigned all rights of the Lender. In other words, the Loan Servicer is not "stepping into the shoes of the Lender" like successors or assigns.[1]

32. For example, when a borrower falls behind on their mortgage and ultimately requires the initiation of a foreclosure action, the Loan Servicer must be provided a power-of-attorney from the Lender.

33. The only rights the Loan Servicer has without subsequent contractual authority from the Lender are explicitly described in the Mortgage documents.

34. Loan Servicers simply provide services to the Lender in the same way that a Loan Sub-Servicer—like PHH—performs a service for the Loan Servicer.

35. At some point in time, PHH acquired the servicing rights for Plaintiff's

---

[1] Moreover the rights of the Loan Sub-Servicer are inherently limited by the specific terms of the contract with the Loan Servicer.

mortgage.

36. When a mortgage loan is assigned, sold, or transferred, an assignment of mortgage is filed with the county clerk ("Assignment of Mortgage").

37. A copy of Plaintiff's Assignment of Mortgage is attached hereto as **Exhibit C**.

38. PHH is not a successor or assign of the Lender—it is simply a Loan Servicer or Loan Sub-Servicer.

39. The ownership rights to Plaintiff's mortgage are wholly separate from the servicing rights that PHH has.

40. PHH is not the Lender nor is PHH the successor or assign of the Lender.

41. PHH does not own the mortgage nor is PHH a successor or assign of the entity that owns the mortgage.

42. Upon information and belief, PHH services mortgages for residential housing loans owned, backed, or controlled by the Federal National Mortgage Association ("Fannie Mae"), including the mortgage on Plaintiff's home and the homes of putative class members.

43. PHH is a servicer of mortgages for residential housing loans. Upon information and belief, PHH earns money based upon a percentage of the funds that it collects from consumers' mortgage payments as well as through the assessment of late fees and other penalties.

8

44.     Upon information and belief, many of the mortgage loans that PHH services, including Plaintiff and putative class members, are delinquent when PHH acquires the servicing rights. Other loans become delinquent during PHH's servicing of the loans.

45.     Upon information and belief, as a mortgage servicer, PHH acquires the servicing rights to a portfolio of loans from Fannie Mae. As part of this process, Fannie Mae and PHH enter into a servicing agreement, a standardized agreement that governs all Fannie Mae backed mortgages, including Plaintiff's and putative class members.

46.     As a Fannie Mae mortgage servicer, PHH is obligated to follow certain standardized procedures that comply both with the subservicing agreement and with the Real Estate Settlement Procedures Act. This includes the specific requirement that PHH can only refer a mortgage loan to foreclosure once it reaches at least 120 days delinquency. *See e.g.,* 12 C.F.R. §1024.41(f)(1)(i).

47.     Upon information and belief, it is only when PHH initiates the foreclosure process (at no date earlier than at least 120 days delinquency) that the specific mortgage loan is triggered for acceleration. As such, PHH does not accelerate a mortgage loan until it is as least 120 days delinquent.

48.     However, when loans for its customers become more than 45 days delinquent, PHH sends a letter that it refers to as a "Final Letter" to coerce and

9

intimidate the borrower into paying the entire default amount of the loan.

49. An exemplar letter sent to the Plaintiff that is materially similar to the Final Letters sent to putative class members is attached hereto as **Exhibit A.**

50. The Final Letter specifically states: "to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before [Date (the "Expiration Date" a date 35 days from the date of the Notice of Default)]."

51. The Final Letter Further states: " [p]lease be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement, in addition to the overdue amount on the mortgage account... Payments received after acceleration that are less than the amount required to reinstate the mortgage may be returned, and may not stop any foreclosure proceedings already begun on the Property."

52. The Final Letter also states: "[f]ailure to cure the default on or before the date specified in this notice [(the Expiration Date)] *may result in acceleration* of the sums secured by the Mortgage Documents and sale of the Property. Upon acceleration, the total amount will be immediately due and payable without further demand."

53. PHH utilizes the Final Letters to make false threats to accelerate borrowers' loans.

54.     If a borrower fails to meet the deadline outlined in the Final Letters,
nothing happens at all because PHH cannot refer to foreclosure and does not
accelerate until the mortgage loan is more than 120 days delinquent.

55.     Upon information and belief, PHH will not accelerate borrowers' loans
and proceed to foreclosure even if the borrower fails to make a payment equal to the
default amount listed in the Final Letter *and* fails to make any payments that come
due during the notice period.

56.     Although the final Letter requires recipients to make a full payment of
the default amount by the Expiration Date to avoid acceleration, PHH maintains a
practice of not accelerating loans so long as the loan is fewer than 120 days
delinquent.

57.     The Final Letters misrepresent the conditions under which PHH intends
to accelerate loans and materially deceives consumers into believing their loans *may*
be accelerated if they fail to fully cure their default prior to the Expiration Date, a
date 35 days from the date of the Final Letter.

58.     The Final Letters instruct borrowers that, to avoid acceleration, they
must pay a larger share of the amount owed that PHH acquires.

59.     Put simply, PHH does not accelerate loans in the manner threatened by
its Final Letters in the usual course of its business – PHH does not accelerate loans
under the circumstances outlined in the Final Letter.

11

60.     The Final Letters cause borrowers, including the Plaintiff and putative Class members, to believe that they are at risk of acceleration and foreclosure if all arrearages to PHH are not paid within the time period identified in the Letter.

61.     The Final Letters misrepresent PHH's intentions and present consumers with a false ultimatum that they satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure.

62.     The Final Letters are materially misleading in that they threaten consumers, including Plaintiff and putative Class members, with acceleration and foreclosure when PHH has neither the present intent, nor the present ability to undertake such actions.

63.     The empty threats of acceleration and foreclosure contained within the Final Letter are clearly designed to scare and intimidate individuals into paying delinquent amounts.

64.     The empty threats of acceleration and foreclosure contained within the Final Letter have the potential of causing individuals, including Plaintiff and putative Class members, to send additional money to PHH that, absent the false and misleading statements, they could have utilized on other necessary expenditures, including food and utility payments.

65.     The empty threats of acceleration and foreclosure make it impossible for a consumer to make a rational decision in response to the Final Letter because it

12

threatens immediate, irreversible consequences.

66.    The empty threats of acceleration and foreclosure are designed to scare consumers into making payments they otherwise may not.

67.    PHH understands the frightening and unnerving nature of the misrepresentations utilized in its Final Letters.

68.    Upon information and belief, the Final Letters were purposefully crafted in such a way to frighten and intimidate consumers into paying money to PHH.

69.    Plaintiff and putative Class members have received numerous Final Letters substantially identical to **Exhibit A.**

70.    Upon information and belief, each Class member has received one or more Final Letter.

71.    Each Final Letter constitutes a separate violation of the FDCPA and GFBPA in that, *inter alia*, each Final Letter threatens to take action not taken in the ordinary course of business nor intended to be taken in the particular instance in which it was threatened.

72.    As a result of the forgoing, Plaintiff and putative Class members have experienced anxiety, stress, anger, frustration, and mental anguish which is fairly traceable to their receipt of Final Letters containing the false ultimatums which, *inter alia,* caused informational harms, violated substantive rights to be free from unfair

13

and abusive debt collection communications, and misled Plaintiff and putative Class members with regard to the amount of money that had to be paid and when it needed to be paid to save their homes from acceleration and/or foreclosure.

73.     Upon receiving Defendant's Final Letter, Plaintiff experienced stress, decreased appetite, loss of sleep, and weight loss.

## CLASS ALLEGATIONS

74.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

75.     PHH is a "collection agency" as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15 or a "debt collector," as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

76.     Plaintiff and each member of the proposed Classes are "consumers," as that term is defined by N.C.G.S. § 58-70-90 and/or § 75-50.

77.     Pursuant to N.C. Rule of Civil Procedure, Rule 23, Plaintiff brings this action on behalf of Classes tentatively defined as follows:

> North Carolina Class: All residential mortgagors who reside in this district to whom PHH sent a letter substantially similar to the  Final Letter attached as **Exhibit A** to this Class Action Complaint, in that the letter warned of immediate acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of the "amount due" or "default amount," dated within the statute of limitations.

14

North Carolina FDCPA Class: All residential mortgagors who reside in this district whose mortgage servicing was transferred to PHH while in a state of default, to whom PHH sent a letter substantially similar to the Final Letter attached as **Exhibit A** to this Class Action Complaint, in that the letter warned of immediate acceleration of the loan and/or commencement of foreclosure proceedings, upon less than full payment of the "amount due" or "default amount," dated within one year preceding the date of filing of this Class Action Complaint.

78.     The individuals protected by the Classes are limited by applicable statutes of limitation prior to the filing of this Complaint, through the date of final resolution of this matter.

79.     Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) PHH and any entity in which PHH has a controlling interest in PHH and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Class.

80.     *Numerosity*: Plaintiff is unable to provide a specific number of members in the Class because that information is solely in the possession of PHH. However, the exact number of Class members, including the names and addresses of all Class members, will be easily ascertained through a review of PHH's business records. Upon information and belief, each Class contains at least a

15

thousand consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable.

81. *Commonality*: Common questions of law and fact predominate over any individual issues that may be presented, because PHH has a pattern, practice and policy of communicating with all borrowers in a materially identical manner. PHH, in seeking to collect the mortgage loan debt of Plaintiff and the putative Class, sent materially identical letters to Plaintiff and putative Class members. Each and every member of the proposed Class is subject to PHH's policies and procedures.

82. *Typicality*: The claims of Plaintiff are typical of the claims of the proposed Classes, and all are based on the same facts and legal theories, as all such claims arise out of PHH's conduct.

83. *Adequate Representation*: Plaintiff is an adequate representative of the Classes in that Plaintiff has no antagonistic or conflicting claims with any other member of the Classes. Plaintiff has also retained counsel experienced in the prosecution of complex Class actions, specifically including experience with consumer class actions.

84. Neither Plaintiff nor Plaintiff's counsel has any interest that might cause Plaintiff not to vigorously pursue this action. Plaintiff is aware of the responsibilities to the putative Class and has accepted such responsibilities.

85. *Predominance and Superiority*: The Classes are appropriate for

16

certification because questions of law and fact common to the members of the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court or courts in other jurisdictions would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

86.     Further, PHH has acted and refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final injunctive and declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION
### (Violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*.)

87.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

88.     PHH is a "debt collector," as defined by the FDCPA, 15 U.S.C. §

17

1692(a)(6), because upon information and belief, PHH obtained the servicing rights to Plaintiff's mortgage while in a state of default.

89.     PHH acted as a "debt collector" in servicing the mortgage loans of Plaintiff and the putative Class members because upon information and belief their loans were in default at the time PHH obtained the servicing rights.

90.     Plaintiff and all members of the FDCPA Class are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692(a)(3), since they are natural persons allegedly obligated to pay a consumer debt.

91.     PHH's correspondence to Plaintiff and Class members set forth herein as **Exhibit A,** states "[t]his communication is from a debt collector attempting to collect debt; any information obtained will be used for that purpose."

92.     At all material times, Plaintiff's debt and the debts of the FDCPA Class Members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

93.     Collection letters such as the Final Letter attached as **Exhibit A** hereto are to be evaluated by the objective "least sophisticated consumer" standard.

94.     FDCPA 15 U.S.C. § 1692(e) states in part:

> A debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:. . .
> (5)   The threat to take any action that cannot legally be taken or that is not intended to be taken. . .

18

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

95.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

96.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

97.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e) in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

98.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it misrepresented its intentions and presented Plaintiff and other putative Class members with a false ultimatum that they must pay all arrearages within the false deadline identified in the Final Letters or face immediate acceleration and initiation of foreclosure proceedings.

99.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it has threatened to take action, including acceleration and foreclosure, when it

19

had no intention of taking such measures under the terms threatened in its Final Letter.

100. PHH's violations of 15 U.S.C. § 1692(e) were material, *inter alia*, because the Final Letter misled consumers about information necessary to permit them to determine their best course of conduct; created a substantial risk of causing homeowners to make less than optimal decisions in managing their finances; and increased the anxiety of homeowners regarding the risk of immediate acceleration or commencement of foreclosure proceedings.

101. Under 15 U.S.C. §1692(e), Plaintiff and the putative Class members have a statutory right to be free from abusive debt collection practices and suffered concrete and particularized injury when PHH violated their substantive rights under the FDCPA, including *inter alia*, the right to be free from false, misleading, and/or deceptive communications regarding Plaintiff and the putative Class members' respective debts.

102. Moreover, Congress has expressly determined that PHH's violations are material by specifically designating that threats to take actions that the debt collector does not intend to take are an unfair collection practice and a violation of the FDCPA.

103. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e) by using false representations and deceptive means, including false threats of

20

acceleration and commencement of foreclosure proceedings, and the Final Letters are therefore illegal.

104. Under 15 U.S.C. § 1692(e), Plaintiff and Class members have a statutory right to be free from abusive debt-collection practices and Plaintiff and Class members suffered concrete and particularized injury when PHH violated that right. Indeed, PHH violated Plaintiff and Class Members' substantive rights under the FDCPA through its conduct, including the false, misleading, and/or deceptive communications regarding Plaintiff and Class members' respective debts.

105. FDCPA § 1692(f) states in pertinent part that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

106. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it unfairly utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

107. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it falsely represented its intention that the "[f]ailure to cure this default on or before the date specified in the notice *may* result in acceleration of the sums secured by the Security Instrument and sale of the Property" is an effort to induce Plaintiff and putative Class members to the pay additional funds.

21

108. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it misrepresented its intentions and presented Plaintiff and putative Class members with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration of all outstanding amounts under the Note immediately due and payable.

109. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it has threatened to take action, including acceleration of all outstanding amounts under the Note, when it had no intention of taking such measures.

110. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f) by using unfair and unconscionable means, including false threats of acceleration of the maturity date of the Note and to declare all outstanding amounts under the Note immediately due and payable.

111. The FDCPA is meant to protect consumers from harmful or abusive debt-collection practices, such as PHH's practices described herein. PHH's use of such practices in connection with Plaintiff and putative Class members' debt constitutes a concrete injury.

112. As a direct result of PHH's actions, Plaintiff and putative Class members suffered injury and were subjected to harms and/or material risks of harm.

113. As a result of PHH's unlawful attempts to collect debt, Plaintiff and the

22

FDCPA Subclass Members are entitled to statutory damages, as well as their reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### (Violations of the North Carolina Debt Collection Act, N.C.G.S. § 75-50, *et seq.*)

114. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

115. PHH is a "debt collector" as defined by the NCDCA, N.C.G.S § 75-50.

116. Plaintiff is a "consumer" as that term is defined by N.C.G.S § 75-50.

117. N.C.G.S § 75-51 prohibits debt collectors from collecting or attempting to collect any debt alleged to be due and owing by means of any unfair threat, coercion, or attempt to coerce, including but not limited to utilizing threats to take any action not in fact taken in the usual course of business.

118. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51 from Plaintiff and the Class in that it has, inter alia, falsely represented that failure to immediately and completely satisfy all arrearages would result in acceleration of their loan in contravention of PHH's specific intentions and ordinary practices.

119. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

23

120. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, in order to continue to own her home.

121. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, for the sole purpose of coercing additional payments.

122. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

123. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure.

124. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

125. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it threatened to take action, including acceleration and foreclosure, when such

24

actions are not taken in the usual course of business.

126. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it utilized unfair threats and coercion, including empty threats of acceleration and foreclosure.

127. N.C.G.S. § 75-54 prohibits debt collectors from collecting or attempting to collect debt by any fraudulent, deceptive, or misleading representations. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, in order to continue to own her home.

128. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

129. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that she must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

130. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

25

131. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54, by using fraudulent, deceptive, or misleading representations, including empty threats of acceleration and foreclosure.

132. N.C.G.S. § 75-55 prohibits debt collectors from collecting or attempting to collect debt by use of any unconscionable means.

133. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, in order to continue to own her home.

134. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

135. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that she must satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure.

136. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

137. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 by

26

using unfair and unconscionable means, including empty threats of acceleration and foreclosure.

138. As a result of PHH's unlawful attempts to collect debt, Plaintiff and the Class are entitled to actual and statutory damages per violation, as well as their reasonable attorneys' fees.

## THIRD CAUSE OF ACTION
### (Violations of the North Carolina Collection Agency Act, N.C.G.S. § 58-70, *et seq.*)

139. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

140. If PHH is not a "debt collector" pursuant to the NCDCA, PHH is a "debt collection agency" as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15.

141. Plaintiff and the Class are each a "consumer" as that term is defined by N.C.G.S. § 58-70-90.

142. PHH has attempted to collect debt from Plaintiff and the Class in violation of N.C.G.S. § 58-70-95 in that, inter alia, it has falsely represented that failure to immediately and completely satisfy all arrearages would result in acceleration of Plaintiff's loans in contravention of PHH's specific intentions and ordinary practices.

143. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95

27

in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

144. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, in order to continue to own her home.

145. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, for the sole purpose of coercing additional payments.

146. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

147. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that she must satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure.

148. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it has threatened to take action, including acceleration and foreclosure when it

28

had no intention of taking such measures.

149. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it has threatened to take action, including acceleration and foreclosure, when such actions are not taken in the usual course of business.

150. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 by using unfair threats and coercion, including empty threats of acceleration and foreclosure.

151. N.C.G.S. § 58-70-115 prohibits collection agencies from collecting or attempting to collect debt by using any unfair practices.

152. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, in order to continue to own her home.

153. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it falsely represented its intention to accelerate and foreclose on Plaintiff's homes in an effort to induce the payment of additional funds.

154. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that she must satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure.

29

155. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

156. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 by using unfair and unconscionable means, including empty threats of acceleration and foreclosure.

157. As a result of PHH's unlawful attempts to collect debt, Plaintiff and the Class are entitled to actual and statutory damages per violation, as well as their reasonable attorney's fees.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

158. The foregoing allegations are hereby incorporated by reference as if fully restated herein.

159. In the Final Letter, PHH made representations to Plaintiff and Class members as set forth in this complaint.

160. Those representations were false.

161. When PHH made the representations, it knew they were untrue or it had a reckless disregard for whether they were true, or it should have known they were untrue.

162. PHH knew that Plaintiff and the Class members were relying on the

30

representations.

163. In reliance upon the representations, Plaintiff and the Class members used their funds to pay amounts in excess of what was required to maintain their home. These consumers could have used the additional funds paid to PHH to fund their other necessary living expenses.

164. PHH had a legal duty to exercise reasonable care and competence in communicating information to Plaintiff and putative Class members.

165. PHH's actions were negligent, reckless, willful, and/or wanton.

166. PHH intended for Plaintiff and putative Class members to rely upon the information in the Final Letters.

167. PHH failed to use the degree of care, knowledge, intelligence, and judgment which a prudent mortgage servicing company would under the same or similar circumstances, thus PHH failed to exercise reasonable care or competence in communicating the false information.

168. Plaintiff and putative Class members actually relied on the false information supplied by PHH, and such reliance was justified, in that a reasonable person in same or similar circumstances, in the exercise of ordinary care would have relied upon the false information and would not have discovered the information was false.

169. PHH's false representations were reasonably calculated to deceive

31

Plaintiff and putative Class members and did deceive Plaintiff and putative Class members.

170. PHH's false representations were reasonably calculated to deceive Plaintiff and putative Class members and did deceive Plaintiff and putative Class members into paying amounts that they would not have otherwise paid.

171. PHH's false representations were reasonably calculated to deceive Plaintiff and putative Class members and did deceive Plaintiff and putative Class members into believing that their mortgage loan would be accelerated and they would lose their homes.

172. In reliance on the false information provided by PHH, Plaintiff and putative Class members did in fact proximately sustain financial injury.

173. In reliance on the false information provided by PHH, Plaintiff and putative Class members did in fact proximately sustain informational injury.

174. As a direct and proximate result of PHH's negligent misrepresentations, Plaintiff and the Class members have been damaged as set forth in this complaint.

175. As a direct and proximate result of the foregoing, Plaintiff and the Class members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

32

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and all others similarly situated pray the Court for judgment as set forth below:

1.  Certifying this action as a class action as provided by Rule 23 of the N.C. Rules of Civil Procedure, appointing Plaintiff as class representative, and appointing the undersigned as Class counsel;

2.  Adjudging that PHH violated the FDCPA, NCDCA/NCCAA, and/or Negligent Misrepresentation doctrine sections enumerated above, and awarding Plaintiff and other putative Class members actual and statutory damages;

3.  Awarding Plaintiff and other putative Class members actual and statutory damages their reasonable attorneys' fees and costs incurred;

4.  That the compensatory damages of Plaintiff and putative Class members be trebled by the Court pursuant to Chapter 75 of the North Carolina General Statutes;

5.  For punitive damages to the extent allowed by law;

6.  That the costs of this action be taxed to PHH;

7.  For a trial by jury on all issues so triable; and,

33

8.      For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 13th day of January 2025.

/s/ Scott C. Harris
Scott C. Harris
NC Bar No.: 35328
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Fax: (919) 600-5035
Email: sharris@milberg.com

Edward H. Maginnis
NC Bar No.: 39317
**MAGINNIS HOWARD**
7706 Six Forks Road
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Email: emaginnis@carolinalaw.com

*Attorneys for Plaintiff*

34

# EXHIBIT

# A

PHH Mortgage Services
PO Box 9117
Temecula, CA 92589-9117

2393402646

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
PHH Mortgage Services
PO Box 24738
Mail Stop SV19
West Palm Beach, FL 33416

Send Correspondence to:
PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

20240821-206

TONIA L WILLIAMS

CHARLOTTE, NC 28212-8439





C/O PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

Tel: 888-820-6474

Fax: 856-917-8300

---

08/20/2024

TONIA L WILLIAMS
REGINALD WILLIAMS

CHARLOTTE, NC 28212-8439

Account Number: ████4093

Sent Via First-Class Mail®

Property Address:

CHARLOTTE, NC 282128439

## PRE FORECLOSURE NOTICE

### AVISO IMPORTANTE PARA PERSONAS QUE HABLAN ESPAÑOL

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

Dear Customer(s),

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received an Order of Discharge in a Chapter 7 case filed under the Bankruptcy Code of the United States, this Notice is not intended as an attempt to collect any debt from you personally. If you have received an Order of Discharge in a Chapter 11, 12 or 13 bankruptcy case, this Notice is not an attempt to collect a pre-petition debt pursuant to a completed and confirmed Bankruptcy Plan. If the foregoing applies to you, this Notice is sent to you only as a preliminary step to an "In Rem" foreclosure on the mortgage against the above-referenced property. Provisions may be contained within the mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt contrary to any entered Bankruptcy Order of Discharge.

In addition, if you have recently filed a petition under the Bankruptcy Code, this Notice has been sent to you because we have not been notified of your bankruptcy case. If the foregoing applies to you, it is **IMPORTANT** that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

---

www.MortgageQuestions.com

XC037



*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

2393402646



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

Tel: 888-820-6474

Fax: 856-917-8300

Mortgage payments on this account are past due, which has caused a default under the terms of the Mortgage or Deed of Trust (hereinafter, "Security Instrument"). As of 08/20/2024, the following amounts are past due:

| | | |
|---|---|---|
| Next Payment Due Date: | | 07/01/2024 |
| Total # of Monthly Payments Due: | | 2 |
| Total Monthly Payments Due: | | $1,671.73 |
| Late Charges: | | $863.25 |
| Other Charges: | Fees/Expenses: | $502.64 |
| | Uncollected NSF Fees: | $0.00 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$3,037.62** |

**\*Fee/Expense Itemization**

| Fee breakdown as of **08/20/2024** | |
|---|---|
| Expense Type | Due |
| AVM | $170.00 |
| BPO | $100.00 |
| CERTIFIED MAIL | $19.59 |
| INSPECTION FEE | $213.05 |
| Total | $502.64 |

In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 10/04/2024, via the addresses or methods listed on the payment remittance information section included in this notice. Please be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement, in addition to the overdue amount on the mortgage account. You have the right to reinstate the account after acceleration subject to the terms of the mortgage and subject to applicable state law. Any payment to reinstate the mortgage after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received after acceleration that are less than the amount required to reinstate the mortgage may be returned, and may not stop any foreclosure proceedings already begun on the Property. This amount represents the total amount required to bring the account current as of the date of this letter. If other amounts are advanced on the account or if the next payment due date occurs on or before the submission of the total amount required to cure the default, those amounts will remain on the account until paid. If certain amounts are not collected to reinstate the account, then those amounts will remain due on the account until paid.

Failure to cure the default on or before the date specified in this Notice may result in acceleration of the sums secured by the Mortgage Documents and sale of the Property. Upon acceleration, the total amount will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including, but not limited to, reasonable attorney's fees and

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

Page 2 of 9

2393402646



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

Tel: 888-820-6474

Fax: 856-917-8300

costs. A customer has the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense to acceleration and sale.

Please be advised if the account is not brought current within 45 days of the date of this letter or one of the alternatives to foreclosure discussed in this letter is not elected, the account may be subject to foreclosure proceedings commencing 45 days from the date of this Notice and may result in the sale of the property.

**PLEASE BE ADVISED THERE MAY BE EXISTING OPTIONS TO AVOID FORECLOSURE THROUGH THE LENDER, PHH Mortgage Services OR A HUD-APPROVED COUNSELING AGENCY. THE CONTACT INFORMATION FOR THESE OPTIONS IS AS FOLLOWS:**

| PHH Mortgage Services | HUD-APPROVED CENTRAL AGENCY* |
|---|---|
| HOME RETENTION DEPARTMENT<br>1661 Worthington Road Suite 100<br>West Palm Beach, Florida 33409<br>Telephone: 888.820.6474 | CCCS, A DIVISION OF TRIANGLE FAMILY SERVICES, INC.<br>3937 Western Blvd<br>Raleigh, NC 27606-1936<br>Phone: 1-919-821-0790<br>Fax: 1-919-518-9349<br>Email: cccs@tfsnc.org<br>Website: www.tfsnc.org |

**To locate the government-approved homeownership counseling agencies, call HUD toll-free at 1-800-569-4287, or visit:** https://apps.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?&webListAction=search&searchstate=NC

The Homeownership Preservation Foundation's "HOPE" hotline is: 1-888-995-HOPE (4673)

The State Home Foreclosure Prevention Project contact information is:

North Carolina Housing Finance Agency
3508 Bush Street
Raleigh, NC 27609-7509
1-888-442-8188
https://www.nchfa.com/current-homeowners/are-you-struggling-pay-your-mortgage

North Carolina Company Number: 119507559

If the account is not brought current in a timely manner, it may result in our election to exercise our right to foreclose on the property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we may be entitled to collect the total arrearage in addition to any expenses of foreclosure, including, but not limited to, reasonable attorney's fees and costs. If the mortgage has already been accelerated and foreclosure proceedings have already begun, we will continue the foreclosure action. A party may assert in court, the non-existence of a default or any other defense to acceleration and foreclosure.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



2393402646



**Attention Servicemembers and Dependents:** Servicemembers on "active duty" or "active service", or a spouse or dependent of a service member, may be entitled to certain legal protections under the federal Servicemembers Civil Relief Act (50 U.S.C. App.§§ 3901) ("SCRA") regarding the service member's interest rate and foreclosure protections. SCRA and certain state laws provide important protections for you. If you are currently in the military service, or have been within the last twelve (12) months, please notify PHH Mortgage Services immediately. Servicemembers and dependents with questions about SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at https://legalassistance.law.af.mil/. Military OneSource is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under SCRA, please go to www.militaryonesource.mil/legal or call 800.342.9647 (toll-free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website. Homeowner counseling is also available at HUD-certified housing counselors http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm).

If the account cannot be brought current, we may be contacted to discuss possible alternatives to foreclosure. Please visit our website at www.MortgageQuestions.com where the account can be reviewed and financial information entered.

We are here to help! LILIANA - ID VIL is your designated contact for questions about mortgage assistance. You can schedule an appointment with LILIANA - ID VIL by visiting www.MortgageQuestions.com or by calling us at 888.820.6474. We're available Monday through Friday from 8:00 am to 9:00 pm and Saturday from 8:00 am to 5:00 pm ET. If you need immediate assistance, another dedicated member of our team will be ready to help.

Sincerely,
Loan Servicing

**Toll Free Phone:** 888.820.6474

**ADDRESS WRITTEN CORRESPONDENCE TO:**

PHH Mortgage Services
P.O. Box 24695
West Palm Beach, FL 33416

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

Tel: 888-820-6474

Fax: 856-917-8300

## Payment Remittance Information

| Payment Methods |
| --- |
| Always include the account number with the payment. Make checks payable to PHH Mortgage Services . |

| | |
| --- | --- |
| MoneyGram® <br> Receive Code: 7440 <br> City: Mount Laurel <br> State: NJ <br> Account: 8014154093 <br> Payable to: PHH Mortgage Services | **Regular Mail** <br> PHH Mortgage Services <br> P.O. Box 371458 <br> Pittsburgh, PA 15250-7458 |
| Western Union Quick Collect <br> Code City: PHHUS <br> State: NJ <br> Reference: Account: 8014154093 | **Overnight Mail** <br> PHH Mortgage Services <br> Attn: P.O. Box 371458 <br> 500 Ross Street 154-0470 <br> Pittsburgh, PA 15250 |
| Pay online: Log in to www.MortgageQuestions.com to make a payment. | |

---

www.MortgageQuestions.com                                                    XC037

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



2393402646

## Agencies located in NORTH CAROLINA

| Agency Name | Phone, Toll-Free, Fax Number, Email, Website | Address |
|---|---|---|
| AFFORDABLE HOMEOWNERSHIP FOUNDATION, INC. | P: 828-553-1863<br>T:<br>F: 239-243-8543<br>E: Robert@ahf.today<br>W: https://www.ahf.today | 1456 Dellwood Rd<br>Waynesville, NC 28786-6914 |
| ALLIANCE CREDIT COUNSELING, INC. | P: 704-341-1010<br>T: 866-303-3328<br>F: 704-973-9462<br>E: home@knowdebt.org<br>W: https://www.knowdebt.org | 8000 Corporate Center Dr<br>Suite 1114<br>Charlotte, NC 28226-4464 |
| BRICK CAPITAL COMMUNITY DEVELOPMENT CORPORATION | P: 919-775-2300x3<br>T:<br>F: 919-774-6808<br>E: info@bc-cdc.org<br>W: https://www.bc-cdc.org | 822 S Horner Blvd<br>Sanford, NC 27330-5310 |
| CCCS OF GREATER GREENSBORO | P: 336-889-6108<br>T: 888-755-2227<br>F: 336-387-9167<br>E: debtdoc@familyservice-piedmont.org<br>W: https://fspcares.org/ | 1401 Long Street<br>HIGH POINT, NC 27262-2541 |
| CCCS OF GREATER GREENSBORO | P: 336-373-8882<br>T: 888-755-2227<br>F: 336-387-9167<br>E: tom.luzon@fspcares.org<br>W: https://fspcares.org/ | 315 E Washington St<br>Greensboro, NC 27401-2911 |
| CCCS OF GREATER GREENSBORO | P: 336-373-8882<br>T: 888-755-2227<br>F: 336-387-9167<br>E: debtdoc@fspcares.org<br>W: https://fspcares.org/ | 236 N. Mebane St<br>Suite 130<br>BURLINGTON, NC 27217-3986 |
| CCCS OF GREATER GREENSBORO | P: 336-373-8882<br>T: 888-755-2227<br>F: 336-387-9167<br>E: debtdoc@fspcares.org<br>W: https://fspcares.org/ | 21 W. 2nd Street<br>LEXINGTON, NC 27292-3483 |
| CCCS, A DIVISION OF TRIANGLE FAMILY SERVICES, INC. | P: 919-821-0790<br>T: 919-821-0790<br>F: 919-518-9349<br>E: cccs@tfsnc.org<br>W: https://tfsnc.org/ | 3937 Western Blvd<br>Raleigh, NC 27606-1936 |
| CENTRE FOR HOME OWNERSHIP & ECONOMIC DEVELOPMENT CORPORATION | P: 919-322-6118<br>T: 111-222-3333<br>F: 919-241-4720<br>E: mstanley@choedc.org<br>W: https://homeownershipcentre.org/ | 960 Corporate Dr Ste 405<br>Hillsborough, NC 27278-8560 |
| CHOANOKE AREA DEVELOPMENT ASSOCIATION OF NC, INC. | P: 252-539-4155<br>T:<br>F: 252-539-2048<br>E: cada@nc-cada.org<br>W: https://www.nc-cada.org | 120 Sessoms Dr<br>Rich Square, NC 27869-9603 |
| CLEVELAND COUNTY COMMUNITY DEVELOPMENT CORPORATION | P: 704-480-7701<br>T:<br>F:<br>E: khaynes@ces-cc.com<br>W: http://clevelandcounty.cdc.org | 823 W Warren St<br>Shelby, NC 28150-5063 |
| COMMUNITY FOUNDATIONS | P: 704-799-7641<br>T:<br>F:<br>E: N/A<br>W: http://www.cfcdc.org | 347 N Main St<br>Mooresville, NC 28115-2958 |
| COMMUNITY LINK | P: 800-977-1969<br>T:<br>F:<br>E: N/A<br>W: http://www.communitylinknc.org | 601 E 5th St Ste 220<br>Charlotte, NC 28202-3093 |



2393402646

## Agencies located in NORTH CAROLINA

| Agency Name | Phone, Toll-Free, Fax Number, Email, Website | Address |
|---|---|---|
| CONSUMER CREDIT COUNSELING SERVICE OF WNC, INC. - DBA - ONTRACK FINANCIAL EDUCATION & COUNSELING | P: 828-255-5166<br>T: 828-255-5168<br>F: 828-255-5129<br>E: jonathans@ontrackwnc.com<br>W: https://www.ontrackwnc.org | 50 S. French Broad Ave<br>Ste 227<br>Asheville, NC 28801-3271 |
| CONSUMER EDUCATION SERVICES, INC | P: 866-635-6414<br>T:<br>F:<br>E: gsmells@cesihousing.org<br>W: http://cesisolutions.org | 3725 National Dr Ste 160<br>Raleigh, NC 27612-4832 |
| DHIC, INC. | P: 919-832-4345<br>T:<br>F:<br>E: N/A<br>W: http://www.dhic.org | 113 S Wilmington St<br>Raleigh, NC 27601-1443 |
| DreamKey Partners | P: 704-342-0933<br>T:<br>F:<br>E: N/A<br>W: http://www.cmhp.org | 4601 Charlotte Park Dr Ste 350<br>Charlotte, NC 28217-1920 |
| EMPOWERMENT INCORPORATED | P: 919-967-8779<br>T:<br>F:<br>E: N/A<br>W: http://site.notavailable.org | 109 N Graham St Ste 200<br>Chapel Hill, NC 27516-2328 |
| FINANCIAL PATHWAYS OF THE PIEDMONT | P: 336-896-1191-1102<br>T:<br>F: 336-896-0481<br>E: sthomas@centerforhomeownership.org<br>W: http://www.financialpaths.org | 7820 North Point Boulevard, Suite 100<br>WINSTON SALEM, NC 27106-3299 |
| FINANCIAL PATHWAYS OF THE PIEDMONT - WINSTON-SALEM OFFICE | P: 336-773-0286-104<br>T:<br>F: 336-773-1253<br>E: pcaldwell@centerforhomeownership.org<br>W: http://www.centerforhomeownership.org | 7820 North Point Blvd, Suite #100<br>WINSTON SALEM, NC 27106-3299 |
| GREENSBORO HOUSING COALITION | P: 336-691-9521<br>T:<br>F: 336-691-9046<br>E: info@gsohc.org<br>W: https://www.gsohc.org | 1031 Summit Ave<br>Suite 1E-2<br>Greensboro, NC 27405-7010 |
| GREENVILLE HOUSING DEVELOPMENT CORPORATION | P: 252-329-4000<br>T:<br>F: 252-329-4026<br>E: moyesd@ghanc.net<br>W: https://GHANC.NET | 1103 Broad St<br>Greenville, NC 27834-3952 |
| HOUSING AUTHORITY OF THE CITY OF HIGH POINT | P: 336-887-2661<br>T:<br>F:<br>E: N/A<br>W: http://www.hpha.net | 500 E Russell Ave<br>High Point, NC 27260-6746 |
| HOUSING AUTHORITY OF THE CITY OF ROCKY MOUNT, NC | P: 252-977-3141<br>T:<br>F:<br>E: N/A<br>W: http://www.rm-ha.org | 1065 Pinehurst Dr<br>Rocky Mount, NC 27801-3944 |
| HOUSING CONSULTANTS GROUP | P: 336-553-0946<br>T:<br>F: 336-553-0948<br>E: N/A<br>W: https://www.housingconsultantsgroup.org | 1031 Summit Ave<br>Suite 2E-2<br>Greensboro, NC 27405-7010 |
| Home Solutions | P: 336-236-1675<br>T:<br>F: 336-236-9408<br>E: phyllis@homesolutionsdcnc.org<br>W: https://www.homesolutionsdcnc.org | 21 W 2nd St<br>Lexington, NC 27292-3463 |

## Agencies located in NORTH CAROLINA

| Agency Name | Phone, Toll-Free, Fax Number, Email, Website | Address |
|---|---|---|
| KINGDOM COMMUNITY DEVELOPMENT CORPORATION | P: 910-484-2722<br>T:<br>F: 910-484-5630<br>E: kingdom.cdc@att.net<br>W: https://www.kingdomcdc.org | 129 N Main St<br>Spring Lake, NC 28390-3912 |
| MONEY MANAGEMENT INTERNATIONAL - CHARLOTTE, N.C. BRANCH | P: 866-232-9080<br>T: 866-232-9080<br>F: 866-921-5129<br>E: counselinginfo@moneymanagement.org<br>W: http://www.moneymanagement.org | 10130 Perimeter Pkwy Ste 200<br>Charlotte, NC 28216-0197 |
| MONROE-UNION COUNTY COMMUNITY DEVELOPMENT CORPORATION | P: 704-283-8804<br>T:<br>F: 704-292-1037<br>E: smuccdc@carolina.rr.com<br>W: https://www.muccdc.com | 349 E Franklin St<br>Monroe, NC 28112-4823 |
| NACA (NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA) CHARLOTTE, NC | P: 704-536-7676<br>T: 617-250-6222<br>F: 877-329-6222<br>E: N/A<br>W: https://www.naca.com | 5500 Executive Center Dr Ste 105<br>Charlotte, NC 28212-8821 |
| NACA (NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA) CHARLOTTE, NC | P: 606-230-6222<br>T: 617-250-6222<br>F: 877-329-6222<br>E: N/A<br>W: https://www.naca.com | 5855 Executive Center Dr Suite 400<br>CHARLOTTE, NC 28212-8881 |
| NACA (NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA) RALEIGH, NC | P: 919-855-8484<br>T: 617-250-6222<br>F: 877-329-6222<br>E: N/A<br>W: https://www.naca.com | 4112 Pleasant Valley Road Suite 220<br>RALEIGH, NC 27612-2634 |
| NAVICORE SOLUTIONS- RALEIGH, NC | P: 866-472-4557<br>T: 866-472-4557<br>F: 732-863-5062<br>E: housing@navicoresolutions.org<br>W: http://www.navicoresolutions.org | 8024 Glenwood Ave<br>Suite 305<br>Raleigh, NC 27612-1912 |
| NID-HCA MERRITT | P: 866-347-7373<br>T:<br>F:<br>E: merritts@nidhousing.com<br>W: https://www.nidhousing.com | 211 E. Six Forks Rd, Bldg C #108<br>RALEIGH, NC 27609-7745 |
| NORTH CAROLINA COMMUNITY HOUSING AND CONSULTING | P: 910-920-3710<br>T:<br>F:<br>W: http://nccommunityhousingconsulting.com | 3620 Legion Rd<br>Hope Mills, NC 28348-8412 |
| OLIVE HILL COMMUNITY ECOMONIC DEVELOPMENT CORPORATION | P: 828-475-4620x305<br>T:<br>F: 828-522-4070<br>E: ohcedc@ohcedc.org<br>W: https://www.ohcedc.org | 200 S College St<br>Suite A<br>Morganton, NC 28655-3319 |
| PROSPERITY UNLIMITED, INC | P: 704-933-7405<br>T:<br>F:<br>E: N/A<br>W: https://www.prosperitycdc.org | 1660 Garnet St<br>Kannapolis, NC 28083-6667 |
| REINVESTMENT PARTNERS | P: 919-667-1000<br>T:<br>F: 919-688-0082<br>E: info@reinvestmentpartners.org<br>W: https://reinvestmentpartners.org/ | 110 E Geer St<br>Durham, NC 27701-2261 |
| RIVER CITY COMMUNITY DEVELOPMENT CORPORATION | P: 252-331-2925x226<br>T:<br>F: 252-331-1425<br>E: rivercitydc@rivercitycdc.org<br>W: http://www.rivercitycdc.org | 501 E Main St<br>Elizabeth City, NC 27909-4429 |



## Agencies located in NORTH CAROLINA

| Agency Name | Phone, Toll-Free, Fax Number, Email, Website | Address |
|---|---|---|
| SANDHILLS COMMUNITY ACTION PROGRAM, INC. | P: 910-606-4044-209<br>T:<br>F:<br>E: nina@sandhillscap.org<br>W: http://sandhillscap.org | 217 S Main St Ste B<br>TROY, NC 27371-3250 |
| SANDHILLS COMMUNITY ACTION PROGRAM, INC. | P: 704-994-2306-210<br>T:<br>F:<br>E: nina@sandhillscap.org<br>W: http://sandhillscap.org | 126 E Wade St<br>Wadesboro, NC 28170-2227 |
| SANDHILLS COMMUNITY ACTION PROGRAM, INC. | P: 910-410-0207<br>T:<br>F:<br>E: nina@sandhillscap.org<br>W: http://sandhillscap.org | 602 Rockingham Rd<br>Rockingham, NC 28379-3738 |
| STATESVILLE HOUSING AUTHORITY | P: 704-761-4500<br>T:<br>F: 704-878-5780<br>E: questions@sha-online.org<br>W: https://statesvillehousing.org | 110 W Allison St<br>Statesville, NC 28677-6616 |
| TELAMON CORPORATION | P: 919-899-9911<br>T: 866-844-6558<br>F: 919-851-9044<br>E: housing@telamon.org<br>W: http://www.telamon.org | 5560 Munford Road<br>Suite 201<br>RALEIGH, NC 27612-2635 |
| TELAMON CORPORATION- RALEIGH BRANCH | P: 000-000-0000<br>T: 000-000-0000<br>F: 000-000-0000<br>E: ldyson@telamon.org<br>W: http://www.telamon.org | 5560 Munford Rd Ste 109<br>Raleigh, NC 27612-2731 |
| THE SAFEGUARD GROUP - HOUSING & DEBT ADVISORS | P: 800-673-6993-146<br>T: 800-673-6993<br>F: 866-383-7161<br>E: roornejo@safeguardcredit.org<br>W: https://www.safeguardcredit.org/ | 240 N Main St<br>Mooresville, NC 28115-2528 |
| WESTERN PIEDMONT COUNCIL OF GOVERNMENTS | P: 828-322-9191<br>T:<br>F:<br>E: N/A<br>W: http://www.wpcog.org | 1880 2nd Ave NW<br>Hickory, NC 28601-5766 |
| WHITE OAK FOUNDATION, INC. | P: 919-362-6799<br>T:<br>F: 919-362-0769<br>E: info@wofinc.org<br>W: https://wofinc.org | 1624 White Oak Church Rd<br>Suite 200<br>Apex, NC 27523-6071 |
| WILSON COMMUNITY IMPROVEMENT ASSOCIATION, INC. | P: 252-243-4855x214<br>T:<br>F: 252-243-2945<br>E: ddawson@wciainc.org<br>W: https://www.wciainc.org | 504 Green St E<br>Wilson, NC 27893-4176 |

2393402646

# EXHIBIT

# B



FOR REGISTRATION JUDITH A. GIBSON
REGISTER OF DEEDS
MECKLENBURG COUNTY, NC
2005 AUG 22 09:48 AM
BK:19214 PG:926-945 FEE:$68.00
INSTRUMENT # 2005161069

5704

**REALTY TITLE CORP.**
420 S. HURSTBOURNE PK.
SUITE 307
LOUISVILLE, KY 40222
(502) 425-8090     **DEED OF TRUST**    106952

Return To: MORTGAGE LENDERS NETWORK USA, INC.
213 COURT ST. MIDDLETOWN, CT 06457
Prepared By: REALTY TITLE CORPORATION
420 S. HURSTBOURNE PARKWAY SUITE 307 LOUISVILLE, KY 40222

MIN 1002610-  5704-4

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) **"Security Instrument"** means this document, which is dated **July 29, 2005**
together with all Riders to this document.

(B) **"Borrower"** is
TONIA L WILLIAMS and
REGINALD WILLIAMS, wife and husband

Borrower is the trustor under this Security Instrument.

(C) **"Lender"** is **MORTGAGE LENDERS NETWORK USA, INC.**

Lender is a **corporation or association**
organized and existing under the laws of **Delaware**

**NORTH CAROLINA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

VMP®-6A(NC) (0207)     Form 3034 1/01
Page 1 of 15     Initials:
VMP MORTGAGE FORMS - (800)521-7291

■ 5704

Lender's address is **213 Court St. Middletown CT 06457**

(D) **"Trustee"** is **Mitchell L. Heffernan**

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated **July 29, 2005**.
The Note states that Borrower owes Lender **One Hundred Nine Thousand and No/100 ---**
**---------------------------------------------------------** Dollars
(U.S. $ **109,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2035**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the
**COUNTY**                                     of **MECKLENBURG**                                     :
      [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
**SEE ATTACHED SCHEDULE A**

Parcel ID Number:                                                    which currently has the address of
                                                                    [Street]
**CHARLOTTE**                                          [City], North Carolina **28212**          [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

(MERS) **-6A(NC)** (0207)                    Page 3 of 15                    Initials: _____          **Form 3034  1/01**

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 the Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded;

or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest

-6A(NC) (0207)                    Page 6 of 15                    Initials: _____    Form 3034  1/01

6704

or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

5704

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

5704

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(NC) (0207)         Initials: [signature]     Form 3034 1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(NC) (0207)                    Page 10 of 15                    Initials:                     Form 3034   1/01

5704

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other

5704

than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

█████5704

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** Attorneys' fees must be reasonable.

**5704**

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           **TONIA L WILLIAMS**              -Borrower

_____          _____ (Seal)
                                           **REGINALD WILLIAMS**            -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                   -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                   -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                   -Borrower

5704

STATE OF NORTH CAROLINA, *Mecklenburg*                    County ss:

I, *Sherry H. Holmes*,
a Notary Public of the County of *Mecklenburg*                    , State of North Carolina, do hereby
certify that
**TONIA L WILLIAMS** *and*
**REGINALD WILLIAMS**, *wife and husband*

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.
Witness my hand and official seal this **29th**                    day of    **July, 2005**

My Commission Expires: *5/5/10*

_____
Notary Public

STATE OF NORTH CAROLINA,                              County ss:
The foregoing certificate of
a Notary Public of the County of
is certified to be correct.                               , State of    **North Carolina**
This **29th**              day of **July, 2005**

Registrar of Deeds

By _____
Deputy Assistant

-6A(NC) (0207)                          Page 15 of 15          Initials: _____          Form 3034  7/01

# EXHIBIT A
## Mortgage-Refi

Street Address:

Charlotte, North Carolina 28212

BEING all of Lot 6 of Lauren Park, Map 2 as shown on map thereof recorded in Map Book 33, Page 323 of the Mecklenburg County Public Registry.

Parcel Number: 103-051-46

5704

# ADJUSTABLE RATE RIDER
**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **29th** day of **July** **2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **MORTGAGE LENDERS NETWORK USA, INC.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

▬▬▬▬▬ , **CHARLOTTE, NC 28212**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **7.800**%. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **August 1, 2007**, and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Two-Tenths** percentage points ( **5.20000** %) to the Current Index. The Note Holder will then round the result of

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)** - Single Family - **Fannie Mae Uniform Instrument**

**-838R** (0402) **Form 3138 1/01**
Page 1 of 3 Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291



MIN- 1002610-6200005704-4

5704

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.8000 % or less than 7.8000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than

**One** percentage points ( 1.0000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.8000 * %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

*My interest rate will never be less than 7.8%

-838R (0402)                    Page 2 of 3          Initials            Form 3138 1/01

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)  
TONIA L WILLIAMS          -Borrower

_____ (Seal)  
REGINALD WILLIAMS          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

-838R (0402)                Page 3 of 3                Form 3138 1/01



JUDITH A. GIBSON
REGISTER OF DEEDS, MECKLENBURG
COUNTY & COURTS OFFICE BUILDING
720 EAST FOURTH STREET
CHARLOTTE, NC 28202

# PLEASE RETAIN YELLOW TRAILER PAGE

It is part of the recorded document, and must be submitted with original for re-recording and/or cancellation.

*********************************************************************************************

| | |
|---|---|
| **Filed For Registration:** | 08/22/2005 09:48 AM |
| **Book:** | RE   19214  **Page:** 926-945 |
| **Document No.:** | 2005161069 |
| | D/T   20 PGS   $68.00 |
| **Recorder:** | LYVANH PHETSARATH |

*********************************************************************************************

State of North Carolina, County of Mecklenburg

The foregoing certificate of SHERRY A HOLMES Notary is certified to be correct. This 22 ND of August 2005

JUDITH A. GIBSON, REGISTER OF DEEDS By: _____
Deputy/Assistant Register of Deeds

*********************************************************************************************



*2005161069*

# EXHIBIT C

For Registration J. David Granberry
Register of Deeds
Mecklenburg County, NC
Electronically Recorded
2012 Dec 12 09:06 AM        RE Excise Tax: $ 0.00
Book: 27894        Page: 996        Fee: $ 26.00
Instrument Number:        2012176257

*J. David Granberry*

# Assignment of Deed of Trust

Dated: **November 29, 2012**                    MIN: 1002610████57044
████ 4830                                       MERS Phone: 888-679-6377

For value received **Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Lenders Network USA, Inc., its successors and assigns, P.O. Box 2026, Flint, MI 48501-2026**, the undersigned hereby grants, assigns and transfers to **U.S. Bank National Association as Trustee for RASC 2005-KS9** all beneficial interest under a certain Deed of Trust dated **July 29, 2005** executed by **TONIA L WILLIAMS AND REGINALD WILLIAMS** and recorded in Book **19214** on Page(s) **926** as Document Number **2005161069** on **August 22, 2005** in the office of the Register of Deeds of **Mecklenburg County, North Carolina.**

MORTGAGE AMOUNT: **$109,000.00**

Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Lenders Network USA, Inc., its successors and assigns

By: _____

**Lisa Marie Spurbeck,**
**Assistant Vice President**

Submitted electronically by US Recordings in compliance with North Carolina statutes governing recordable documents and the terms of the submitter agreement with the Mecklenburg County Register of Deeds

STATE OF **Minnesota**            )
COUNTY **Ramsey**            ) SS

███ *U03223701*

On **November 29, 2012** before me, **Mary Xiong**, **Notary Public** in and for said State personally appeared **Lisa Marie Spurbeck**, **Assistant Vice President** of **Mortgage Electronic Registration Systems, Inc.**, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

This instrument was prepared by:
Nhia Moua
2925 Country Drive
St. Paul, MN 55117

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

**Mary Xiong, Notary Public**
My Commission expires: **January 31, 2016**

**MARY XIONG**
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

# STATE OF NORTH CAROLINA

MECKLENBURG County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff |
|---|
| TONIA WILLIAMS |

| Address |
|---|
| |

| City, State, Zip |
|---|
| |

## **CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| Name Of Defendant(s) |
|---|
| PHH MORTGAGE CORPORATION d/b/a PHH MORTAGE SERVICES |

| Date Original Summons Issued |
|---|
| |

| Date(s) Subsequent Summons(es) Issued |
|---|
| |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| PHH Mortgage Corporation c/o: Corporation Service Company 2626 Glenwood Avenue, Suite 550 Raleigh, NC 27608 | |

⚠️ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Scott C. Harris Milberg Coleman Bryson Phillips Grossman, PLLC 900 W. Morgan St. Raleigh, NC 27603 tel: 919-600-5003; email: sharris@milberg.com | 1/14/2025 | 9:18:02 am ☒ AM ☐ PM |
| | Signature /s/ Brittany Farris | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV001882-590

TONIA WILLIAMS, on Behalf of Herself )
and All Others Similarly Situated, )
                                )
           Plaintiff, )
                                )     **ACCEPTANCE OF SERVICE**
v. )
                                )
PHH MORTGAGE CORPORATION, d/b/a )
PHH MORTGAGE SERVICES, )
                                )
          Defendant. )

       NOW COMES C. Bailey King, Jr., counsel for Defendant PHH Mortgage Corporation

d/b/a PHH Mortgage Services ("PHH"), and, as authorized by his client, hereby accepts service of

the Summons and Complaint in the above-captioned litigation pursuant to N.C. Gen. Stat. § 1A-1,

Rule 4, the same as if it had been served by a duly authorized process officer of the State of North

Carolina..  By accepting service of process on this 28th day of January, 2025, PHH's deadline to

answer or otherwise respond to the Complaint in this matter is February 27, 2025.  In addition, by

accepting service of process, PHH does not waive any claims or defenses, except for process and

service of process under N.C. Gen. Stat. § 1A-1, Rule 12(b)(4) and (5).

       This the 28th day of January, 2025.

                              **BRADLEY ARANT BOULT CUMMINGS LLP**

                              */s/ C. Bailey King, Jr.*
                              C. Bailey King, Jr. (N.C. Bar No. 34043)
                              bking@bradley.com
                              Truist Center
                              214 North Tryon Street, Suite 3700
                              Charlotte, NC 28202

P: (704) 338-6000 | F: (704) 332-8858

*Counsel for Defendant PHH Mortgage Corporation
d/b/a PHH Mortgage Services*