**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| TONIA WILLIAMS, on behalf of herself and all others similarly situated, | |
| *Plaintiff*, | Civil Action No. 3:25-CV-144-FDW-SCR |
| v. | **FIRST AMENDED COMPLAINT – CLASS ACTION** |
| PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES, | [Jury Trial Demanded] |
| *Defendant*. | |

Plaintiff Tonia Williams ("Williams" or "Plaintiff"), on behalf of herself and all others similarly situated, files this class action complaint against PHH Mortgage Corporation d/b/a Mortgage Services ("PHH" or "Defendant") and states:

## NATURE OF THE ACTION

1.      This is a consumer protection action brought by Plaintiff and others similarly situated to obtain redress from PHH's systematic use of unlawful and unfair debt collection practices to collect upon residential consumer mortgage loans. Specifically, during the relevant time period, PHH sent borrowers form letters alleging that the borrowers are in default on their mortgages and that the failure to immediately make a ***full and complete*** payment of all arrearages may or may not result in immediate acceleration of their loan and foreclosure on the property.

2.      The form letter has been distributed across the nation, including a form letter sent out to citizens and residents of the state of North Carolina (hereinafter referred to as the "Final Letter(s)").

3.      A copy of a Final Letter materially similar to those sent to all North Carolina

putative Class Members is attached as **Exhibit A** to this Complaint.

4.      The Final Letter presents a false ultimatum: pay the entire balance of arrearages immediately or face acceleration.

5.      The Final Letters include the following representations:

In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 10/04/2024, via the addresses or methods listed on the payment remittance information section included in this notice. Please be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement, in addition to the overdue amount on the mortgage account. You have the right to reinstate the account after acceleration subject to the terms of the mortgage and subject to applicable state law. Any payment to reinstate the mortgage after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received after acceleration that are less than the amount required to reinstate the mortgage may be returned, and may not stop any foreclosure proceedings already begun on the Property. This amount represents the total amount required to bring the account current as of the date of this letter. If other amounts are advanced on the account or if the next payment due date occurs on or before the submission of the total amount required to cure the default, those amounts will remain on the account until paid. If certain amounts are not collected to reinstate the account, then those amounts will remain due on the account until paid.

Failure to cure the default on or before the date specified in this Notice may result in acceleration of the sums secured by the Mortgage Documents and sale of the Property. Upon acceleration, the total amount will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including, but not limited to, reasonable attorney's fees and costs. A customer has the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense to acceleration and sale.

Please be advised if the account is not brought current within 45 days of the date of this letter or one of the alternatives to foreclosure discussed in this letter is not elected, the account may be subject to foreclosure proceedings commencing 45 days from the date of this Notice and may result in the sale of the property.

6.      None of the foregoing statements are consistent with (a) PHH's internal policies regarding acceleration and foreclosure; or (b) federal law regarding referring matters to attorneys for foreclosure.

7.      Thus, PHH's representation that failure to immediately pay all arrearages may result in immediate acceleration of the loan is false, misleading, and unfairly coercive.

8.      This false and deceptive ultimatum in the Final Letter contradicts PHH's actual policy to *never* accelerate a loan so long as any payment sufficient to bring the loan less than 45 days delinquent is made prior to the expiration date set forth in the Final Letter.

9.      The Final Letter(s) sent by PHH to Plaintiff and others similarly situated is a false and misleading threat of acceleration and foreclosure designed to intimidate borrowers into making payments to PHH that are beyond their means and beyond what is necessary to avoid acceleration and save their homes from foreclosure.

10.     This action is brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50; and, alternatively, the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15 *et seq.*

11.     This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all borrowers to whom PHH has, or will send, one or more Final Letter(s) pursuant to PHH's standardized policies and procedures during the applicable statute of limitations period in violation of state and federal law set forth herein. All conditions precedent to the filing of this action, if any, have been performed, have occurred, or have been waived.

## PARTIES

12.     Plaintiff is a citizen and resident of Mecklenburg County, North Carolina.

13.     PHH is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, with a principal place of business in Mount Laurel, New Jersey. PHH is regularly engaged in the business of collecting debt in the State of North Carolina.

14.     PHH frequently acts as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), including with regard to Plaintiff's mortgage loan because, upon information and belief, PHH obtained the servicing rights while in a state of default. PHH is also a "debt collector" as defined by the NCDCA, N.C.G.S. § 75-50. Alternatively, PHH is a "collection agency" as defined by the NCCAA, N.C.G.S. § 58-70-15.

3

15.     PHH's employees, affiliates, directors, agents, and attorneys act under the direction and supervision of PHH and, therefore, PHH is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of *respondent superior*.

## JURISDICTION AND VENUE

16.     Plaintiff originally filed this putative class action against PHH in the Superior Civil Court of Mecklenburg County, North Carolina on January 14, 2025, styled *Tonia Williams, On Behalf of Herself and All Others Similarly Situated v. PHH Mortgage Corporation d/b/a PHH Mortgage Services*, Case No. 25-CV-001822-590. (the "State Court Action").

17.     Jurisdiction was proper in the State Court Action pursuant to N.C.G.S. § 1-75.4 because the Superior Civil Court of Mecklenburg County has personal jurisdiction over PHH. The injuries herein occurred in this state, and, at the time of those injuries, PHH solicited and performed business activities within this state.

18.     Venue was proper in the State Court Action pursuant to N.C.G.S. § 1-82 because a substantial portion of the wrongful acts giving rise to this Complaint occurred in Mecklenburg County, and because Plaintiff resides in Mecklenburg County.

19.     On February 26, 2025, Defendant removed the State Court Action to this Court pursuant to 28 U.S.C. §§ 1331 and 1367. This Court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. § 1331 because this claim arises under a federal statute, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. This Court may exercise supplemental jurisdiction over Counts II, III, and IV of Plaintiff's Complaint pursuant to 28 U.S.C. § 1367(a) because Plaintiff's state law claims "are so related to claims in the action within such original

4

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id*.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the removed State Court Action was originally filed in the Superior Civil Court of Mecklenburg County, North Carolina, a court within the Western District of North Carolina, Charlotte Division. 28 U.S.C. § 113.

## FACTUAL ALLEGATIONS

21. Plaintiff is an owner and resident of a home located at 6737 Bernedele Glen Drive, Charlotte, North Carolina 28212-8439 ("Home"). On or about July 29, 2005, Plaintiff obtained a mortgage subject to a Security Instrument with the original "Lender," Mortgage Lenders Network USA, Inc., for the purchase of her residence. See attached **Exhibit B**.

22. A copy of Plaintiff's Mortgage is attached hereto as **Exhibit B**.

23. Lenders, often immediately upon the closing of a loan, will package pools of loans to be sold as a security. When that occurs, the owner of the Loan is generally a corporate entity, often referred to as a special purpose entity or special purpose vehicle (an "SPV"). The sole purpose of an SPV in this context is to acquire and hold a portfolio of loans which can be transferred among investors.

24. The SPV will often 'assign' the ownership rights to a related corporate entity or trust for the purpose of acting on behalf of the owner because the successor in interest SPV does not act; it only exists to hold a portfolio of loans.

25. In this case, it appears that the SPV successor in interest to the loan is "RASC 2005-KS9" which has assigned their rights to U.S. Bank National Association as trustee.

5

26. When a mortgage loan is assigned, sold, or transferred, an assignment of mortgage is filed with the county clerk ("Assignment of Mortgage").

27. A copy of Plaintiff's Assignment of Mortgage is attached hereto as **Exhibit C**. The servicing of a mortgage loan is separate from the ownership of a mortgage loan.

28. Although lenders sometimes service loans themselves, many lenders utilize a mortgage servicing company to service the debt as the "Loan Servicer." This is particularly common where loans are pooled and sold to an SPV following the closing of the loan.

29. Loan Servicers have a contractual relationship with the Lender to perform their primary responsibilities of collection of mortgage payments from the Plaintiff and distributing their payments to, *inter alia*, the Lender or other investors, tax authorities, and insurance companies.

30. The ownership rights to a Mortgage can be sold, transferred, or assigned without notice to the borrower and, when this occurs, the Loan Servicer may change.

31. Plaintiff's Mortgage, for example, specifically contemplates this possibility:

> The Note, or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer")…There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.
>
> **Exhibit B**, ¶ 20.

32. Loan Servicers acquire the servicing rights to an SPV's portfolio of loans through a Master Servicing Agreement with the owner or its assigns. Those rights are typically for a definite term. Even if the Lender sells or assigns the loan portfolio to another party, the rights of the Loan Servicer continue after the loan is assigned to another Lender.

6

33.    Oftentimes, Loan Servicers will have a contractual relationship with another entity to actually perform the Loan Servicers' servicing responsibilities (referred to as a "Loan Sub-Servicer.")

34.    The rights that the Loan Servicers are provided are inherently limited by the contract with the Lender—the Loan Servicer is not a successor in interest with respect to the Lender nor is the Loan Servicer assigned all rights of the Lender. In other words, the Loan Servicer is not "stepping into the shoes of the Lender" like successors or assigns.[1] When a borrower falls behind on the mortgage and ultimately requires the initiation of a foreclosure action, the Loan Servicer must be provided a power-of-attorney from the Lender.

35.    The only rights the Loan Servicer has without subsequent contractual authority from the Lender are explicitly described in the Mortgage documents.

36.    Loan Servicers simply provide services to the Lender in the same way that a Loan Sub-Servicer—like PHH—performs a service for the Loan Servicer.

37.    PHH is not a successor or assign of the Lender—it is simply a Loan Servicer or Loan Sub-Servicer. The ownership rights to Plaintiff's mortgage are wholly separate from the servicing rights.

38.    PHH is not the Lender, nor is PHH the successor or assign of the Lender. PHH does not own the mortgage, nor is PHH a successor or assign of the entity that owns the mortgage. Accordingly, PHH is not entitled to any pre-suit notice and cure which may be contained in Plaintiff's or the putative Class Member's mortgage agreements with the owners of the mortgage.

---

[1] Moreover, the rights of the Loan Sub-Servicer are inherently limited by the specific terms of the contract with the Loan Servicer.

39.     PHH is not entitled to any pre-suit notice and cure provision since it is not the owner of Plaintiff's or the putative Class Members' mortgage, and it is also not an assign of Plaintiff's or the putative Class Members' mortgage. This can be shown through the discovery of the servicing agreement between the owners of Plaintiff's and the putative Class Members' mortgages.

40.     In addition, since the allegations in this Complaint stem from PHH's violations of the FDCPA and the North Carolina debt collection laws, neither Congress nor the North Carolina General Assembly did not provide any requirement that a protected consumer is required to provide PHH or any other servicer with pre-suit notice or opportunity to cure Plaintiff's and the putative Class Members' claims against PHH. *See e.g.*, 15 U.S.C. §§ 1692, *et seq.*; N.C.G.S. § 75-50, *et seq.*; N.C.G.S. § 58-70-15, *et seq.*

41.     Regardless, affording PHH a reasonable opportunity to cure its violations of the FDCPA would be unnecessary and futile. PHH has long been aware that its Final Letter is misleading and harmful. Its internal training, compliance audits, and documented consumer complaints confirm that borrowers frequently misunderstand the timing and consequences of foreclosure as described in the Letter. Despite this, PHH has refused to revise its template. As such, any requirement to provide PHH with an opportunity to cure would be futile, and no statute or contract imposes such a duty under these circumstances.

42.     As discussed herein, as PHH's management and compliance personnel are aware, PHH's customer service records contain numerous documented consumer complaints explicitly identifying confusion and distress caused by the misleading timing and language used in the notices. Despite this, PHH has taken no corrective action. PHH's persistent failure to revise or clarify these notices, despite explicit, internal acknowledgment of the misleading effect of the

Final Letter, demonstrates deliberate indifference to borrowers' rights. Further, even if Plaintiff or the putative Class Members were required to provide pre-suit notice (which they are not), providing notice and cure would have been futile since PHH has been aware of the deceptive nature of its Final Letter for the past several years.

43.     In addition, there is no way that PHH could cure the misleading nature of the Final Letter other than by revising the language in the Final Letter and providing Plaintiff and the putative Class Members with damages, as provided by the FD`CPA and the requisite state debt collection laws. Therefore, any alleged requirement for Plaintiff or the putative Class Members to afford PHH a reasonable opportunity to cure its debt collection violations, is excused and thereby deemed satisfied.

44.     Upon information and belief, PHH services mortgages for residential housing loans owned, backed, or controlled by the Federal National Mortgage Association ("Fannie Mae"), including the mortgage on Plaintiff's home and the homes of putative Class Members.

45.     Upon information and belief, because these loans—including Plaintiff's loan—were owned, backed, or controlled by Fannie Mae, PHH is obligated to comply with the Fannie Mae servicing guidelines even when it is providing mortgage servicing duties on behalf of another successor in interest to the Lender.

46.     Upon information and belief, PHH earns money based upon a percentage of the funds that it collects from consumers' mortgage payments as well as through the assessment of late fees and other penalties.

47.     Upon information and belief, many of the mortgage loans that PHH services, including Plaintiff's and the putative Class Members', are delinquent when PHH acquires the servicing rights. Other loans become delinquent during PHH's servicing of the loans.

9

48.     Upon information and belief, as a mortgage servicer, PHH acquires the servicing rights to a portfolio of loans from Fannie Mae or Freddie Mac.

49.     As part of this process, Fannie Mae, Freddie Mac, and PHH enter into a servicing agreement, a standardized agreement that governs all Fannie-Mae-backed mortgages, including Plaintiff's and the putative Class Members'.

50.     As a Fannie Mae or Freddie Mac mortgage servicer, PHH is obligated to follow certain standardized procedures that comply both with the subservicing agreement and with the Real Estate Settlement Procedures Act ("RESPA"). This includes the specific requirement that PHH can <u>only</u> refer a mortgage loan to foreclosure once it reaches at least 120 days delinquency. *See e.g.,* 12 C.F.R. § 1024.41(f)(1)(i).

51.     A copy of Fannie Mae's Servicing Guidelines is attached hereto as **<u>Exhibit D</u>**.

52.     PHH does not own Plaintiff's or the putative Class Members' mortgage loans. PHH is a sub-servicer engaged to manage payment collection and borrower communications on behalf of the actual mortgage owner, typically a securitized trust or SPV.

53.     PHH has no successor or assign rights under the mortgage contracts and is therefore not entitled to invoke or enforce any contractual pre-suit notice-and-cure provisions. The distinction between mortgage ownership and servicing responsibility is well established in both Plaintiff's Mortgage and the servicing industry more broadly. As detailed above, PHH lacks standing to enforce contractual pre-suit notice-and-cure provisions, and any such requirement is inapplicable or excused.

54.     PHH's Final Letter specifically states: "to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or

before [Date (the "Expiration Date" a date 35 days from the date of the Notice of Default)]."

*See* **Ex. A.**

55.     The Final Letter Further states: " [p]lease be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement, in addition to the overdue amount on the mortgage account… Payments received after acceleration that are less than the amount required to reinstate the mortgage may be returned, and may not stop any foreclosure proceedings already begun on the Property." *Id.*

56.     The Final Letter also states: "[f]ailure to cure the default on or before the date specified in this notice [(the Expiration Date)] *may result in acceleration* of the sums secured by the Mortgage Documents and sale of the Property. Upon acceleration, the total amount will be immediately due and payable without further demand." *Id.*

57.     PHH utilizes the Final Letter to make false threats to accelerate borrowers' loans. If a borrower fails to meet the deadline outlined in the Final Letters, nothing happens at all because PHH cannot refer to foreclosure and does not accelerate until the mortgage loan is more than 120 days delinquent. PHH's internal policies and procedures explicitly instruct employees and systems to automatically send these letters after borrowers reach certain delinquency thresholds, irrespective of individual borrower circumstances.

58.     Upon information and belief, PHH will not accelerate borrowers' loans and proceed to foreclosure even if the borrower fails to make a payment equal to the default amount listed in the Final Letter *and* fails to make any payments that come due during the notice period. Although the Final Letter requires recipients to make a full payment of the default amount by

the Expiration Date to avoid acceleration, PHH maintains a practice of not accelerating loans so long as the loan is fewer than 120 days delinquent.

59.     The Final Letter misrepresents the conditions under which PHH intends to accelerate loans and materially deceives consumers into believing their loans *may* be accelerated if they fail to fully cure their default prior to the Expiration Date, a date 35 days from the date of the Final Letter.

60.     The Final Letter instructs borrowers that, to avoid acceleration, they must pay a larger share of the amount owed than PHH requires. Put simply, in the usual course of its business, PHH never accelerates loans or mortgages in the manner threatened by its Final Letter. PHH's Final Letters are false because PHH does not accelerate loans under the circumstances outlined, threatened, or as represented in the Final Letters.

61.     Upon information and belief, PHH maintains internal compliance policies, training manuals, and written procedures acknowledging that borrowers may misunderstand or be misled by its standard default notices, particularly regarding the timing and imminence of foreclosure.

62.     Upon information and belief, PHH's internal training explicitly recognizes the importance of borrower perceptions of urgency and potential foreclosure risk in improving collection rates.

63.     Upon information and belief, PHH has been involved in prior lawsuits and regulatory settlements addressing substantially similar allegations of misleading default notices and premature foreclosure threats. These previous cases and their resulting resolutions provided PHH with clear, unequivocal notice that its default notices were misleading to borrowers. Despite such knowledge, PHH continues to systematically use these Final Letters.

64.     Upon information and belief, PHH's customer service records contain numerous documented consumer complaints explicitly identifying confusion and distress caused by the misleading timing and language used in the notices. Upon information and belief, PHH's internal audits and compliance reviews have repeatedly highlighted that the Final Letters fail to clearly communicate borrowers' rights and the timeline applicable to potential foreclosure actions, yet PHH took no corrective actions.

65.     Upon information and belief, PHH's management, senior management, and compliance personnel are aware, based upon documented internal communications and employee reports, that borrowers routinely interpret PHH's standardized pre-foreclosure notices as indicating immediate or imminent foreclosure actions. PHH's management's persistent failure to revise or clarify these Final Letters, despite explicit internal acknowledgment of the Final Letters' misleading effect, demonstrates deliberate indifference to borrowers' rights.

66.     PHH derives a direct financial benefit from maintaining ambiguity and urgency in these notices, as such confusion increases borrower compliance and immediate payment under duress, thereby increasing cash flows and reducing the cost associated with borrower defaults.

67.     PHH's Final Letters cause borrowers, including the Plaintiff and putative Class Members, to believe that they are at risk of acceleration and foreclosure if all arrearages to PHH are not paid within the time period identified in the Letter.

68.     The Final Letters misrepresent PHH's intentions and present consumers with a false ultimatum that they either satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately, foreclosure.

69.     The Final Letters are materially misleading in that they threaten consumers, including Plaintiff and putative Class Members, with acceleration and foreclosure when PHH has neither the present intent, nor the present ability to undertake such actions. PHH's empty threats of acceleration and foreclosure contained within the Final Letter are clearly designed to scare and intimidate individuals into paying delinquent amounts. PHH's empty threats of acceleration and foreclosure contained within the Final Letter have the potential of causing individuals, including Plaintiff and putative Class Members, to send additional money to PHH that, absent the false and misleading statements, they could have utilized on other necessary expenditures, including food and utility payments. PHH's empty threats of acceleration and foreclosure make it impossible for a consumer to make a rational decision in response to the Final Letter because it threatens immediate, irreversible consequences. PHH's empty threats of acceleration and foreclosure are designed to scare consumers into making payments they otherwise may not.

70.     PHH understands the frightening and unnerving nature of the misrepresentations utilized in its Final Letters. Upon information and belief, the Final Letters were purposefully crafted in such a way to frighten and intimidate consumers into paying money to PHH. PHH deliberately chooses ambiguous language designed to pressure borrowers into immediate payment of overdue amounts.

71.     The Final Letters are intentionally drafted to appear urgent and threatening, thereby incentivizing borrowers under duress to divert limited resources toward mortgage payments, even where PHH knew foreclosure and acceleration were not yet legally possible. PHH's  practice of issuing misleading Final Letters has been the subject of numerous consumer complaints, investigations, and similar lawsuits.

72.     Despite being repeatedly notified of the deceptive nature of Final Letters—through direct consumer complaints, class actions, and, upon information and belief, industry compliance reviews—PHH has failed to meaningfully modify its practices or clarify its Final Letters to borrowers and putative Class Members. Plaintiff and putative Class Members have received numerous Final Letters substantially identical to **Exhibit A.** Upon information and belief, each Class Member has received one or more Final Letter.

73.     Each Final Letter constitutes a separate violation of the FDCPA and North Carolina debt collection laws in that, *inter alia*, each Final Letter threatens to take action not taken in the ordinary course of business nor intended to be taken in the particular instance in which it was threatened. PHH's Final Letters intentionally obscure mandatory foreclosure waiting periods required by the U.S. Department of Housing and Urban Development ("HUD"), the Consumer Financial Protection Bureau ("CFPB"), and applicable state laws, misleading borrowers into believing foreclosure actions and loan accelerations are imminent consequences of failing to comply with artificially urgent deadlines.

74.     As a result of the foregoing, Plaintiff and putative Class Members have experienced anxiety, stress, anger, frustration, and mental anguish which is fairly traceable to their receipt of Final Letters containing the false ultimatums which, *inter alia,* caused informational harms, violated substantive rights to be free from unfair and abusive debt collection communications, and misled Plaintiff and putative Class Members with regard to the amount of money that had to be paid and when it needed to be paid to save their homes from acceleration and/or foreclosure.

75.     Plaintiff and putative Class Members suffered tangible economic harm and emotional distress directly resulting from PHH's misleading pre-foreclosure notices, including

unnecessary prioritization of mortgage payments over other basic necessities, increased anxiety and stress, and detrimental financial decisions made under undue influence. Upon receiving PHH's Final Letter, Plaintiff experienced stress, decreased appetite, loss of sleep, and weight loss.

76.     Following the receipt of PHH's Final Letter, Plaintiff experienced significant emotional distress, including fear and concern over being homeless.

77.     Plaintiff also experienced physical distress. She was unable to eat due to the anxiety caused by the potential foreclosure and lost a significant amount of weight as a result.

78.     After receiving the letter, Plaintiff took proactive steps to avoid losing her home, including contacting and consulting with a third party to seek assistance in preventing foreclosure.

## CLASS ALLEGATIONS

79.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

80.     PHH is a "collection agency" as defined by the NCCAA, N.C.G.S. § 58-70-15 or a "debt collector," as defined by the NCDCA, N.C.G.S. § 75-50.

81.     Plaintiff and each putative Class Member are "consumers," as that term is defined by N.C.G.S. § 58-70-90 and/or § 75-50.

82.     Pursuant to Rule 23 of the Rules of Civil Procedure, Plaintiff brings this action on behalf of Classes tentatively defined as follows:

> **North Carolina Class:** All residential mortgagors who reside in North Carolina, who within the applicable statute of limitations period, PHH sent a letter containing language substantially identical or materially similar to the Final Letter attached as **Exhibit A**, which stated or implied that failure to cure the default

or pay the total amount due may or may not result in acceleration of the loan or mortgage and/or may or may not also result in commencement of foreclosure proceedings.

**North Carolina FDCPA Class:** All residential mortgagors who reside North Carolina whose mortgage servicing was transferred to PHH while in a state of default, who within the applicable statute of limitations period, PHH sent a letter containing language substantially identical or materially similar to the Final Letter attached as **Exhibit A**, which stated or implied that failure to cure the default or pay the total amount due may or may not result in acceleration and/or may or may not result in commencement of foreclosure proceedings. The individuals protected by the Classes are limited by applicable statutes of limitation prior to the filing of this Complaint, through the date of final resolution of this matter.

83.     Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) PHH and any entity in which PHH has a controlling interest in PHH and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Class.

84.     *Numerosity*: Plaintiff is unable to provide a specific number of members in the Class because that information is solely in the possession of PHH. However, the exact number of Class Members, including the names and addresses of all Class Members, will be easily ascertained through a review of PHH's business records. Upon information and belief, each Class contains at least a thousand consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable.

85.     *Commonality*: Common questions of law and fact predominate over any individual issues that may be presented, because PHH has a pattern, practice and policy of communicating with all borrowers in a materially identical manner. PHH, in seeking to collect the mortgage loan debt of Plaintiff and the putative Class, sent materially identical letters to

Plaintiff and putative Class Members. Each and every Member of the proposed Class is subject to PHH's policies and procedures.

86.     *Typicality*: The claims of Plaintiff are typical of the claims of the proposed Classes, and all are based on the same facts and legal theories, as all such claims arise out of PHH's conduct.

87.     *Adequate Representation*: Plaintiff is an adequate representative of the Classes in that Plaintiff has no antagonistic or conflicting claims with any other member of the Classes. Plaintiff has also retained counsel experienced in the prosecution of complex Class actions, specifically including experience with consumer class actions.

88.     Neither Plaintiff nor Plaintiff's counsel has any interest that might cause Plaintiff not to vigorously pursue this action. Plaintiff is aware of the responsibilities to the putative Class and has accepted such responsibilities.

89.     *Predominance and Superiority*: The Classes are appropriate for certification because questions of law and fact common to the members of the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court or courts in other jurisdictions would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

90.     Further, PHH has acted and refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final injunctive and declaratory relief with respect to the Classes as a whole.

### FIRST CAUSE OF ACTION
**(Violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692,** *et seq.***)**

91.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

92.     PHH is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692(a)(6), because upon information and belief, PHH obtained the servicing rights to Plaintiff's mortgage while in a state of default.

93.     PHH acted as a "debt collector" in servicing the mortgage loans of Plaintiff and the putative Class Members because upon information and belief their loans were in default at the time PHH obtained the servicing rights.

94.     Plaintiff and all members of the FDCPA Class are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692(a)(3), since they are natural persons allegedly obligated to pay a consumer debt.

95.     PHH's correspondence to Plaintiff and Class Members set forth in **Exhibit A,** states "[t]his communication is from a debt collector attempting to collect debt; any information obtained will be used for that purpose."

96.     At all material times, Plaintiff's debt and the debts of the FDCPA Class Members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

97.     Collection letters such as the Final Letter attached as **Exhibit A** hereto are to be evaluated by the objective "least sophisticated consumer" standard.

98.     FDCPA 15 U.S.C. § 1692(e) states in part:

> A debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:. . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

99.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it utilized false threats and misleading representations regarding the amounts that consumers must pay and when they must pay it, in order to continue to own their homes.

100.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

101.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e) in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

102.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it misrepresented its intentions and presented Plaintiff and other putative Class Members with a false ultimatum that they must pay all arrearages within the false deadline identified in the Final Letters or face immediate acceleration and initiation of foreclosure proceedings.

103.     PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures under the terms threatened in its Final Letter.

104. PHH's violations of 15 U.S.C. § 1692(e) were material, *inter alia*, because the Final Letter misled consumers about information necessary to permit them to determine their best course of conduct; created a substantial risk of causing homeowners to make less than optimal decisions in managing their finances; and increased the anxiety of homeowners regarding the risk of imminent acceleration or commencement of foreclosure proceedings.

105. Moreover, Congress has expressly determined that PHH's violations are material by specifically designating that threats to take actions that the debt collector does not intend to take are an unfair collection practice and a violation of the FDCPA.

106. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e) by using false representations and deceptive means, including false threats of acceleration and commencement of foreclosure proceedings, and the Final Letters are therefore illegal.

107. Under 15 U.S.C. § 1692(e), Plaintiff and Class Members have a statutory right to be free from abusive debt-collection practices and Plaintiff and Class Members suffered concrete and particularized injury when PHH violated that right. Indeed, PHH violated Plaintiff and Class Members' substantive rights under the FDCPA through its conduct, including the false, misleading, and/or deceptive communications regarding Plaintiff and Class Members' respective debts.

108. FDCPA § 1692(f) states in pertinent part that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

109. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it unfairly utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

110. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it falsely misrepresented its intention that the "[f]failure to cure this default on or before the date specified in the notice *may* result in acceleration of the sums secured by the Security Instrument and sale of the Property" is an effort to induce Plaintiff and putative Class Members to the pay additional funds.

111. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it misrepresented its intentions and presented Plaintiff and putative Class Members with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration of all outstanding amounts under the Note immediately due and payable.

112. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it has threatened to take action, including acceleration of all outstanding amounts under the Note, when it had no intention of taking such measures.

113. PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(f) by using unfair and unconscionable means, including false threats of acceleration of the maturity date of the Note and to declare all outstanding amounts under the Note immediately due and payable.

114. The FDCPA is meant to protect consumers from harmful or abusive debt-collection practices, such as PHH's practices described herein. PHH's use of such practices in connection with Plaintiff and putative Class Members' debt constitutes a concrete injury.

115. As a direct result of PHH's actions, Plaintiff and putative Class Members suffered injury and were subjected to harm and/or material risks of harm.

116. Plaintiff and putative Class Members suffered tangible economic harm and emotional distress directly resulting from PHH's misleading pre-foreclosure notices, including

unnecessary prioritization of mortgage payments over other basic necessities, increased anxiety and stress, and detrimental financial decisions made under undue duress.

117.     As a result of PHH's unlawful attempts to collect debt, Plaintiff and the FDCPA Subclass Members are entitled to statutory damages, as well as their reasonable attorneys' fees. Finally, PHH is not entitled to any pre-suit notice and cure provision since it is not the owner of Plaintiff's or the putative Class Members' mortgage, and it is also not an assign of Plaintiff's or the putative Class Members' mortgage.

118.     Congress also did not provide any requirement that a protected consumer is required to provide PHH or any other servicer with pre-suit notice or opportunity to cure Plaintiff's and the putative Class Members' claims against PHH. *See e.g.*, 15 U.S.C. §§ 1692, *et seq*. Affording PHH a reasonable opportunity to cure its violations of the FDCPA would be unnecessary and futile. As discussed herein, PHH's management and compliance personnel are aware, PHH's customer service records contain numerous documented consumer complaints explicitly identifying confusion and distress caused by the misleading timing and language used in the notices, yet PHH has taken no corrective actions. PHH's persistent failure to revise or clarify these notices, despite explicit internal acknowledgment of the Final Letters misleading effect, demonstrates deliberate indifference to borrowers' rights, and, even if Plaintiff or the putative Class Members were required to provide pre-suit notice (which they are not), providing notice and cure would have been futile to PHH since PHH has been aware of the Final Letters deception for the past several years.

119.     In addition, there is no way PHH could cure the misleading nature of the Final Letters other than revising the language in the Final Letters and providing Plaintiff and the putative Class Members with damages as provided by the FDCPA and the requisite state debt

23

collection laws. Therefore, any requirement for Plaintiff or the putative Class Members to resort to an informal notice and cure period to PHH about the deceptions in the Final Letters or afford PHH a reasonable opportunity to cure its debt collection violations is excused and thereby deemed satisfied. As detailed above, PHH lacks standing to enforce contractual pre-suit notice-and-cure provisions, and any such requirement is inapplicable or excused.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violations of the North Carolina Debt Collection Act, N.C.G.S. § 75-50, *et seq*.)**

120.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

121.     PHH is a "debt collector" as defined by the NCDCA, N.C.G.S § 75-50.

122.     Plaintiff is a "consumer" as that term is defined by N.C.G.S § 75-50.

123.     N.C.G.S § 75-51 prohibits debt collectors from collecting or attempting to collect any debt alleged to be due and owing by means of any unfair threat, coercion, or attempt to coerce, including but not limited to utilizing threats to take any action not in fact taken in the usual course of business. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51 from Plaintiff and the Class in that it has, *inter alia*, falsely represented that failure to immediately and completely satisfy all arrearages may result in acceleration of their loan in contravention of PHH's specific intentions and ordinary practices.

124.     PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it utilized false threats and misleading representations regarding the amounts that Plaintiff must pay and when she must pay it, in order to continue to own her home.

125. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

126. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it misrepresented its intentions and presented Plaintiff and putative class members with a false ultimatum that they must either satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it threatened to take action, including acceleration and foreclosure, when such actions are not taken in the usual course of business. PHH has attempted to collect debt in violation of N.C.G.S. § 75-51, in that it utilized unfair threats and coercion, including empty threats of acceleration and foreclosure.

127. N.C.G.S. § 75-54 prohibits debt collectors from collecting or attempting to collect debt by any fraudulent, deceptive, or misleading representations.

128. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, in order to continue to own her home.

129. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

130. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that she must satisfy

all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

131. PHH has attempted to collect debt in violation of N.C.G.S. § 75-54, in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

132. PHH has attempted to collect debt by using fraudulent, deceptive, or misleading representations, including empty threats of acceleration and foreclosure.

133. N.C.G.S. § 75-55 prohibits debt collectors from collecting or attempting to collect debt by use of any unconscionable means. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiff must pay, and when she must pay it, in order to continue to own her home. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

134. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that she must satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures. PHH has attempted to collect debt in violation of N.C.G.S. § 75-55 by using unfair and unconscionable means, including empty threats of acceleration and foreclosure.

135.     Due to PHH's actions, Plaintiff and Class Members suffered tangible economic harm and emotional distress directly resulting from PHH Mortgage's misleading pre-foreclosure notices, including unnecessary prioritization of mortgage payments over other basic necessities, increased anxiety and stress, and detrimental financial decisions made under undue duress.

136.     As a result of PHH's unlawful attempts to collect debt, Plaintiff and putative Class Members are entitled to actual and statutory damages per violation, as well as their reasonable attorneys' fees.

137.     The North Carolina General Assembly does not require any protected consumer to provide PHH, or any other servicer, with pre-suit notice or an opportunity to cure Plaintiff's and the putative Class Members' claims against it for a violation of the NCDCA.

138.     In addition, any notice and cure would have been futile for the reasons stated herein.  As detailed above, PHH lacks standing to enforce contractual pre-suit notice-and-cure provisions, and any such requirement is inapplicable or excused.

### **THIRD CAUSE OF ACTION**
**(Violations of the North Carolina Collection Agency Act, N.C.G.S. § 58-70, *et seq*.)**

139.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

140.     If PHH is not a "debt collector" pursuant to the NCDCA, PHH is a "debt collection agency" as defined by the NCCAA, N.C.G.S. § 58-70-15.

141.     Plaintiff and the Class are each a "consumer" as that term is defined by N.C.G.S. § 58-70-90.

142.     PHH has attempted to collect debt from Plaintiff and the Class in violation of N.C.G.S. § 58-70-95 in that, *inter alia*, it has falsely represented that failure to immediately and

completely satisfy all arrearages would result in acceleration of Plaintiff's loans in contravention of PHH's specific intentions and ordinary practices.

143.    PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

144.    PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it utilized false threats and misleading representations regarding the amounts that Plaintiff must pay and when she must pay them, in order to continue to own her home.

145.    PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it utilized false threats and misleading representations regarding the amounts that Plaintiff must pay and when she must pay them, for the sole purpose of coercing additional payments.

146.    PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

147.    PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that she must satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure.

148.    PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

149. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 in that it has threatened to take action, including acceleration and foreclosure, when such actions are not taken in the usual course of business.

150. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-95 by using unfair threats and coercion, including empty threats of acceleration and foreclosure.

151. N.C.G.S. § 58-70-115 prohibits collection agencies from collecting or attempting to collect debt by using any unfair practices.

152. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it unfairly utilized false threats and misleading representations regarding the amounts that Plaintiff must pay and when she must pay them, in order to continue to own her home.

153. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it falsely represented its intention to accelerate and foreclose on Plaintiff's homes in an effort to induce the payment of additional funds.

154. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it misrepresented its intentions and presented Plaintiff with a false ultimatum that she must satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure.

155. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

156. PHH has attempted to collect debt in violation of N.C.G.S. § 58-70-115 by using unfair and unconscionable means, including empty threats of acceleration and foreclosure.

157. Plaintiff and Class Members suffered tangible economic harm and emotional distress directly resulting from PHH's misleading pre-foreclosure notices, including unnecessary prioritization of mortgage payments over other basic necessities, increased anxiety and stress, and detrimental financial decisions made under undue duress.

158. As a result of PHH's unlawful attempts to collect debt, Plaintiff and putative Class Members are entitled to actual and statutory damages per violation, as well as their reasonable attorney's fees.

159. The North Carolina General Assembly does not require that a protected consumer provide PHH, or any other servicer, with pre-suit notice or an opportunity to cure Plaintiff's and the putative Class Members' claims against it for a violation of the NCCAA.

160. As detailed above, PHH lacks standing to enforce contractual pre-suit notice-and-cure provisions, and any such requirement is inapplicable or excused.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

161. The foregoing allegations are hereby incorporated by reference as if fully restated herein.

162. In its Final Letter, PHH made representations to Plaintiff and Class Members as set forth in this complaint.

163. Those representations were false.

164. When PHH made the representations, it knew they were untrue or it had a reckless disregard for whether they were true, or it should have known they were untrue.

165. PHH knew that Plaintiff and the Class Members were relying on the representations.

166.     In reliance upon the representations, Plaintiff and the Class Members used their funds to pay amounts in excess of what was required to maintain their home. These consumers could have used the additional funds paid to PHH to fund their other necessary living expenses.

167.     PHH had a legal duty to exercise reasonable care and competence in communicating information to Plaintiff and putative Class Members.

168.     PHH's actions were negligent, reckless, willful, and/or wanton.

169.     PHH intended for Plaintiff and putative Class Members to rely upon the information in the Final Letters.

170.     PHH failed to use the degree of care, knowledge, intelligence, and judgment which a prudent mortgage servicing company would under the same or similar circumstances. Thus, PHH failed to exercise reasonable care or competence in communicating the false information.

171.     Plaintiff and putative Class Members actually relied on the false information supplied by PHH, and such reliance was justified, in that a reasonable person in same or similar circumstances, in the exercise of ordinary care would have relied upon the false information and would not have discovered the information was false.

172.     PHH's false representations were reasonably calculated to deceive Plaintiff and putative Class Members and did deceive Plaintiff and putative Class Members.

173.     PHH's false representations were reasonably calculated to deceive Plaintiff and putative Class Members and did deceive Plaintiff and putative Class Members into paying amounts that they would not have otherwise paid.

174.     PHH's false representations were reasonably calculated to deceive Plaintiff and putative Class Members and did deceive Plaintiff and putative Class Members into believing that their mortgage loan would be accelerated and they would lose their homes.

175.     In reliance on the false information provided by PHH, Plaintiff and putative Class Members did in fact proximately sustain financial injury.

176.     In reliance on the false information provided by PHH, Plaintiff and putative Class Members did in fact proximately sustain informational injury.

177.     As a direct and proximate result of PHH's negligent misrepresentations, Plaintiff and the Class Members have been damaged as set forth in this complaint.

178.     Plaintiff and putative Class Members suffered tangible economic harm and emotional distress directly resulting from PHH's misleading pre-foreclosure notices, including unnecessary prioritization of mortgage payments over other basic necessities, increased anxiety and stress, and detrimental financial decisions made under undue influence.

179.     As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## JURY DEMAND

Plaintiff and putative Class Members hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, and all others similarly situated, pray the Court for judgment as set forth below:

1.     Certifying this action as a class action as provided by Rule 23 of the Rules of Civil Procedure, appointing Plaintiff as class representative, and appointing the undersigned as Class counsel;

2. Adjudging that PHH violated the FDCPA or NCDCA/NCCAA as enumerated above, and awarding Plaintiff and other putative Class Members actual and statutory damages;

3. Awarding Plaintiff and other putative Class Members actual and statutory damages their reasonable attorneys' fees and costs incurred;

4. That the compensatory damages of Plaintiff and putative Class Members be trebled by the Court pursuant to Chapter 75 of the North Carolina General Statutes;

5. For punitive damages to the extent allowed by law;

6. That the costs of this action be taxed to PHH;

7. For a trial by jury on all issues so triable; and,

8. For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 2nd day of April 2025.

/s/ Scott C. Harris
Scott C. Harris
NC Bar No.: 35328
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street Raleigh,
North Carolina 27603
Telephone: (919) 600-5000
Fax: (919) 600-5035
Email: sharris@milberg.com

Edward H. Maginnis
NC Bar No.: 39317
**MAGINNIS HOWARD**
7706 Six Forks Road
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Email: emaginnis@carolinalaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 2, 2025, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which served a true and correct copy via electronic mail on the

following counsel of record:

C. Bailey King, Jr. (N.C. Bar No. 34043)
bking@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
214 N. Tryon St., Ste. 3700
Charlotte, NC 28202

Michael R. Pennington (*pro hac vice pending*)
mpennington@bradley.com
Zachary A. Madonia (*pro hac vice pending*)
zmadonia@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203

*Attorneys for Defendant*
*PHH Mortgage Corporation d/b/a PHH Mortgage Services*

Respectfully submitted,

*/s/ Scott C. Harris*
Scott C. Harris

*Attorney for Plaintiff*