# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:25-CV-00144-KDB-WCM

| | |
|---|---|
| TONIA WILLIAMS AND BEVERLY DANTZLER,<br><br>**Plaintiffs,**<br><br>v.<br><br>PHH MORTGAGE CORPORATION,<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

IN THIS MATTER, Defendant PHH Mortgage Corporation ("PHH") and Plaintiffs have entered into a Stipulation of Settlement and Release (the "Settlement Agreement"), in which the Parties agreed to settle and dismiss this putative class-action litigation, subject to the Court's approval. Before the Court are Plaintiffs' Unopposed Motion for Final Approval of Class Settlement and Motion for Approval of Plaintiffs' Attorney's Fees, Expense and Service Awards. Doc. Nos. 48, 51.

The Court previously entered an Order conditionally certifying the putative classes for settlement purposes only, granting preliminary approval of the settlement, directing notice to the classes, and scheduling a Fairness Hearing. Doc. No. 46. Notice was given to potential class members in accordance with the Court's Order and no objections were filed against the settlement. A Fairness Hearing was then held on June 9, 2026. Having now carefully considered these motions, the Parties' briefs, exhibits and oral argument on the motions from the Parties' counsel at the Fairness Hearing, the Court will **GRANT** the motion seeking final approval of the Parties' settlement and partially **GRANT** the motion for attorney's fees.

1

## I.     LEGAL STANDARD

A class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). Approval of a Federal Rule of Civil Procedure 23 class action settlement proceeds in two stages. At the first stage, the court examines the terms of the proposed settlement to determine whether it is within the range of possible approval, subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object. *Brent v. Advanced Med. Mgmt., LLC*, 733 F. Supp. 3d 376, 380 (D. Md. 2024). Further, "[w]here a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Fed. R. Civ. P. 23(a) and at least one of the subsections of Fed. R. Civ. P. 23(b)." *Id*. (citing Manual for Complex Litigation § 21.632 (4th ed. 2004) ("MCL"). At the second stage, after a final fairness hearing, "[i]f the proponents of the settlement [ ] satisf[y] their burden of showing that it is fair, adequate and reasonable, then the Court will approve the settlement." *Id*.

"The Rule 23 inquiry is certainly not meant to discourage settlement, but it is more than a rubber stamp[.]" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). "When the court reviews a proposed class-action settlement, it acts as a fiduciary for the class." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 483-84 (4th Cir. 2020) (citing *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019). In this role, "the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." *Sharp Farms*, 917 F.3d at 294 (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (cleaned up)). Further, the court must protect the class's interests from parties and counsel overeager to settle (who may deny absent class members relief that they would otherwise receive) and frivolous objectors (who may impede or delay valuable compensation to others). *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co*., 28 F.4th 513, 521, 525 (4th Cir. 2022)

Ultimately, the court must conclude that a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *1988 Tr. for Allen*, 28 F.4th at 520-21; MCL, § 21.632.

Under Rule 23(e)(2), "[t]he fairness analysis is intended primarily to ensure that a 'settlement is reached as a result of good-faith bargaining at arm's length, without collusion.' " *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (alteration omitted) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). The Fourth Circuit has identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the class action litigation. *1988 Tr. for Allen*, 28 F.4th at 527 (citing *Lumber Liquidators*, 952 F.3d at 484).

With respect to adequacy, the Court considers the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *Jiffy Lube*, 927 F.2d at 158; *see also Lumber Liquidators*, 952 F.3d at 484; *Berry*, 807 F.3d at 618 ("[T]he fact that only one of the approximately 200 million members of the ... Class objects ... is relevant to our decision [upholding the settlement as fair, reasonable, and adequate]."). The primary concern is the "protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *Jiffy Lube*, 927 F.2d at 158.

Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).

## II.     FACTS AND PROCEDURAL HISTORY

### A.     Background

#### 1.     Procedural History

There are four different class action lawsuits related to this dispute, which all involve the same counsel.[1] In each, the representative Plaintiff contends that PHH sent notice of default letters to the proposed class members that contained "false threats" that PHH intended to immediately accelerate and foreclose upon their loans if they did not promptly cure their defaults.

a)     On December 18, 2023, Plaintiff Beverly Dantzler filed a Complaint in the United States District Court for the Central District of California. *Dantzler v. PHH*, Case No. 2:23-cv-10562-SRM, DE 1 (C.D. Cal.) (the "California case"). Following an Amended Complaint, PHH moved to dismiss Plaintiff Dantzler's claims. On December 23, 2024, the Court entered an ORDER DENYING IN SUBSTANTIAL PART & GRANTING IN PART the motion to dismiss. *Dantzler v. PHH Mortg. Corp.*, No. 2:23-CV-10562-MRA-MAR, 2024 WL 5379405 (C.D. Cal. Dec. 23, 2024).

b)     In May 2024, after the Motion to Dismiss was filed in *Dantzler*, counsel filed *Polcare v. PHH Mortg. Corp.*, 1:24-CV-639 (LEK/CFH) (N.D.N.Y.) (the "New York case"). After the filing of a motion to dismiss, an amended complaint and a second motion to dismiss, that action was dismissed with prejudice on September 30, 2025. *See Polcare v. PHH Mortg. Corp.*, No. 1:24-cv-639-LEK-CFH, 2025 WL 3085653 (N.D.N.Y. Sept. 30, 2025). The Court is informed that dismissal was appealed and the matter has been separately resolved, with the resolution only involving the named plaintiff.

---

[1] Despite the fact that the Plaintiffs in the second, third, and fourth cases were all already members of the proposed nationwide class in *Dantzler*, counsel never moved to consolidate the cases. Rather, it appears that in an effort to hedge their bets they filed multiple actions, the latter two in state court (later removed). After the settlement was reached, an Amended Complaint was filed by consent in this action to add Ms. Dantzler as a Plaintiff, with a corresponding stay requested and granted in the California case.

4

c)      On January 14, 2025, soon after the ruling in *Dantzler*, Plaintiff Tonia Williams filed this action (the "North Carolina case") against PHH in Mecklenburg County Superior Court. Doc. No. 1-2. PHH removed the case to this Court on February 26, 2025. Following an Amended Complaint, Doc. No. 12, PHH moved to dismiss on April 16, 2025. Doc. No. 15. The motion was briefed but never resolved.

d)      Later in January 2025, Plaintiffs' counsel filed an action in Georgia state court that PHH removed to the Northern District of Georgia. *Alexander v. PHH Mortg. Corp.*, No. 1:25-cv-01006-MHC-WEJ (N.D. Ga.) (the "Georgia case"). Upon the filing of a motion to dismiss, the magistrate judge recommended in June 2025 that all claims against PHH be dismissed with prejudice. *See Alexander v. PHH Mortg. Corp.*, No. 1:25-cv-01006-MHC-WEJ, 2025 WL 2094084 (N.D. Ga. Jun. 5, 2025). As with *Polcare*, Plaintiff appealed the decision and then resolved the action with only the named plaintiff.

So, if one is keeping score (and the Court must), by October 2025, of the four lawsuits filed by Plaintiffs' counsel, one had been trimmed in part, two had been dismissed or recommended for dismissal in their entirety, and the fourth had a motion to dismiss pending. On October 7, 2025, the Parties participated in a mediated settlement conference, which led to the November 2025 settlement of the *Williams* and *Dantzler* actions now before the Court for approval.

### B.      Settlement Terms

#### 1.      *The Proposed Settlement Class*

The Agreement describes a Settlement Class, defined to include each of the following:

- The FDCPA Class: All borrowers on residential mortgage loans secured by mortgaged property in the United States (1) whose mortgage loans were serviced by PHH; (2) to which PHH acquired servicing rights when such loans were 30 or more days delinquent on their loan payment obligations; and (3) to whom, according to PHH's records, one or more Notices of Default were sent between December 18, 2022 and

December 15, 2025. Excluded from the FDCPA Class are (a) PHH's board members and executive level officers; and (b) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

- The California Class: All borrowers on residential mortgage loans secured by mortgaged property in the State of California whose loans were serviced by PHH, and to whom, according to PHH's records, one or more Notices of Default were sent between December 18, 2022, and December 15, 2025. Excluded from the California Class are (a) PHH's board members and executive level officers; and (b) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

- The North Carolina Class: All borrowers on residential mortgage loans secured by mortgaged property in the State of North Carolina whose loans were serviced by PHH, and to whom, according to PHH's records, one or more Notices of Default were sent between January 14, 2021, and December 15, 2025. Excluded from the North Carolina class are (a) PHH's board members and executive level officers; and (b) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

The three Settlement Classes contain 95,983 separate loans, and an even greater number of Settlement Class Members. *See* Doc. No. 38-1 ¶ 6. Of those loans, 9,551 are in both the FDCPA Class and either the California or North Carolina Classes. *Id*.

### 2. *Monetary Relief*

PHH agreed to create three $500,000 Settlement Funds for the Settlement Class, the FDCPA, California, and North Carolina Settlement Funds, for a total amount of $1,500,000. PHH has also agreed to pay up to $200,000 of Costs of Administration directly, separate and apart from the

Settlement Funds. Doc. No. 41-1 ("Settlement Agreement") ¶¶ 1.1.11, 6.3. Thus, PHH's total expenditure may reach $1,700,000 (however, PHH at oral argument acknowledged that sum could well be less than the costs of defense if the actions proceeded).

There are approximately 77,517 loans that are eligible to recover an equal allocation of the FDCPA settlement fund, with 20,612 and 7,405 loans eligible for payouts from the California and North Carolina funds respectively. If a borrower falls into more than one class then the borrower receives an allocation from each applicable fund. If the Court awards the full amount of requested Attorney's Fees and Expenses and Service Awards, the estimated recovery (per loan) is only $4.34 for the FDCPA Class, $16.33 for the California Class, and $45.46 for the North Carolina Class. Individual Allocations will automatically be provided to all Settlement Class Members who did not opt out and no portion of the Settlement Funds will revert to PHH. There is no provision for non-monetary relief; that is, Defendant is not obligated to change its commercial practices and has not done so.

### 3. *Release of Claims against PHH*

In exchange for the relief just described, Plaintiffs and the Settlement Class Members, upon entry by the Court of this Order, will release PHH from any and all claims of any kind that relate to or arise from of any Notice of Default sent by PHH to Settlement Class Members during the relevant time periods for each of the Settlement Classes. *See* Settlement Agreement ¶¶ 1.1.42, 1.1.43, 1.1.44, 1.1.45, 3.3.

### 4. *Payment of Notice and Administration Costs*

Based on the Settlement Agreement, the Court approved the Parties' hiring of Eisner Advisory Group, LLC ("Eisner") as the Settlement Administrator. Doc. No. 46. As Settlement Administrator, Eisner's responsibilities include providing notice of the Settlement to the proposed Settlement Class, including a mailed Postcard Class Notice, an emailed Email Class Notice, and a Long Form Class Notice, establishing the Settlement Website, and operating a toll-free number for Settlement Class

7

Members to call to receive information about the Settlement (as well as an email address). Up to $200,000 of the costs of distributing notice and, more generally, for Settlement Administration are being paid by PHH in addition to the Settlement Funds being offered to Settlement Class Members. Settlement Agreement ¶ 1.1.11. The estimate of actual expenses paid is $170,000 to $180,000.

### 5.     *Class Counsel Fees and Expenses and Service Awards*

All fee and expense awards and service awards the Court approves will be paid from the Settlement Funds, on a pro rata basis (*id.*  ¶¶ 9.1, 9.2), but the Settlement is not conditioned upon the Court approving any fee and expense awards to Class Counsel or plaintiff service award. Plaintiffs seek attorneys' fees of $500,000, a third of the primary settlement funds, plus $8,003.82 in unreimbursed expenses. Plaintiffs are also seeking Service Awards of $5,000 each. There have been no objections regarding the requested attorney's fees and incentive awards.

### C.     Notice to and Reaction of the Settlement Class

Following preliminary approval of the Settlement, and as ordered by the Court in its Preliminary Approval Order, the Settlement Administrator distributed timely notice of the Settlement to the Settlement Class Members. (*See Declaration of Ryan Aldridge* ("*Aldridge Decl.*") Doc. No. 53 ¶¶ 4–14. In total, nearly 99% of the Class Loans received a Class Notice, with 84.45% receiving the notice by email and 14.26% receiving the notice by mail. *Id*. ¶ 15. In addition, Eisner also created a Settlement Website, which was operational on March 4, 2026. *Id*. ¶ 12. The Settlement Website included copies of the operative complaint, the Long Form Class Notice, the Preliminary Approval Order, Plaintiffs' motion for attorneys' fees, expenses, and service awards, and the Agreement. *Id*. The website also provided answers to frequently asked questions, included important dates and described the procedures for opting out or objecting to the Settlement, and allowed Settlement Class Members to elect to receive their Individual Allocations electronically or to change the address to which checks would be mailed. *Id*. Finally, Eisner created a toll-free interactive voice response

("IVR") system and established an email address for fielding queries from Settlement Class Members. *Id*. ¶¶ 13–14.

The Court previously set a deadline of May 5, 2026, by which requests for exclusion from Potential Settlement Class Members had to be received by the Settlement Administrator. Twenty-two (22) requests for exclusion were received by Eisner before the deadline, with one more being received after the deadline. *Id*. ¶ 18. May 5, 2026 was also the deadline for Settlement Class Members to file objections to the Settlement, and there have been no objections.

## III. DISCUSSION

### A. Final Certification of the Settlement Class

The Court previously preliminarily and conditionally certified the Settlement Class, including the FDCPA Class, the California Class, and the North Carolina Class, in its Preliminary Approval Order. Doc. No. 46. The Court finds that there have been no objections to class certification and no change in circumstances to alter the Court's previous conclusion that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b) have been satisfied for settlement purposes for the Settlement Class, including for each of the California Class, the North Carolina Class, and the FDCPA Class. Accordingly, the Court will make final its certification of each Settlement Class, for the reasons stated in the Preliminary Approval Order and based on the totality of the record.

Specifically, the Court finds that, in the context of this settlement: (a) the number of Settlement Class members for each of the three classes is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Plaintiffs are typical of the claims of the Settlement Class they seek to represent (Plaintiff Williams for the FDCPA Class and North Carolina Class and Plaintiff Dantzler for the California Class); (d) Plaintiffs have fairly and adequately represented and will continue to fairly and adequately represent the interests of the Settlement Class Member for purposes of the Agreement; (e) the

questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action settlement is superior to the other available methods for the fair and efficient adjudication of the controversy.

The Court also appoints Scott C. Harris of Bryson Harris Suciu & DeMay, PLLC and Edward H. Maginnis and Karl S. Gwaltney of Maginnis Howard as Class Counsel for the Settlement Class. The Court also finally designates Plaintiffs Tonia Williams and Beverly Dantzler as the class representatives.

**B.  The Best Practical Notice was provided to the Settlement Class, and that Notice was Reasonable and Adequate.**

Before granting final approval, a court must ensure that reasonable and adequate notice was provided to class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985). This is because the Due Process Clause and Rule 23 require a court to "direct notice … to all class members who would be bound by the" settlement. Fed. R. Civ. P. 23(e)(1)(B). Such notice must be "the best notice that is practicable under the circumstances," directed individually "to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, both the form and content of the Class Notices, and the method of distributing notice to the Settlement Class, satisfied all applicable requirements of Rule 23(c)(2)(B) and Due Process. Indeed, the Settlement Administrator has verified compliance with the Court-approved notice program, which reached nearly 99% of the Settlement Class Members. Doc. No. 53 ¶ 6–14. Further, no one has objected to the method of notice nor is there evidence that any other form or content would have been more practicable and effective in its reach.

C.  **The Settlement is Fair, Adequate, and Reasonable.**

Rule 23(e) provides five requirements that must be satisfied for a proposed class settlement to secure final approval:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under the subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e)).

As discussed above, in the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement. *Skochin v. Genworth Fin., Inc.*, Civil Action No. 3:19-cv-49, 2020 WL 6697418, at *2 (E.D. Va. 2020) (slip copy); *Lumber Liquidators,* 952 F.3d at 484 ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors.").[2]

Fairness focuses on whether the proposed settlement was the product of good-faith bargaining at arm's length, free from collusion. *Jiffy Lube*, 927 F.2d at 159. Adequacy "focuses on whether the consideration provided to the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009).

---

[2] In any event, the applicable Rule 23(e) factors are also satisfied here. The Court-approved notice program directed the best notice practicable under the circumstances to all Settlement Class Members, and a final fairness hearing was held on June 9, 2026. The motion for final approval and the submissions made in support of it demonstrate that there are no agreements other than the Settlement Agreement itself, Settlement Class Members have had an appropriate time to opt-out or object; and currently there have been no objections filed against the Settlement.

With respect to "fairness," the Court finds that the proposed settlement is "fair"; that is, it was entered into in good faith and was not the product of collusion (even though, as discussed below, it was a good deal for the Defendants). With respect to adequacy, the Court considers the *Jiffy Lube* factors identified above: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *See Jiffy Lube*, 927 F.2d at 158.

Also, the proposed settlement is "adequate." Taking the *Jiffy Lube* factors together, in measuring the adequacy of a settlement, the Court compares what is obtained by a plaintiff class and what is foregone. Here, the scale is light on both accounts. As described above, the settlement class members have received scant monetary compensation, with the vast majority of class members receiving less than $5.00. And the plaintiff classes have gained no non-monetary consideration – Defendants are free to continue with their challenged behavior. But, on the other hand, as shown by the Plaintiffs lack of success in the other companion cases, they have not foregone the prospect of a significant recovery. In sum, the putative classes are giving up little and getting little in return, resulting in an "adequate," albeit likely inconsequential result. Therefore, the Court concludes the proposed settlement is fair, adequate and reasonable and will be given final approval. Indeed, the Court does not want to discourage the settlement of dubious/losing claims. However, as discussed below, whether such a result reflects "success" for the purposes of awarding attorney's fees is an entirely different matter.

## D. The requested Attorneys' Fees and Expenses and Service Awards are Excessive.

As Plaintiffs have acknowledged, the most critical factor in determining the reasonableness of an attorney fee award is "the degree of success obtained." *McDonnell v. Miller Oil Co.*, 134 F.3d 638,

641 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010); *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir.2006).

In their memorandum in support of final approval of their requests, Plaintiffs claim that the North Carolina class will receive "substantial benefits," that the monetary relief represents "a significant and excellent result" and further that Plaintiffs have obtained a "sizeable recovery" and "real, meaningful benefits." Doc. No. 52 at 6, 15. While these descriptions may be apt for the attorney's fees recovery sought by counsel, they clearly misrepresent the benefits to class members. In fact, at oral argument, Plaintiffs' counsel sought to distance himself from these characterizations, calling them "hyperbolic." He could have said, "plainly false." The monetary class recoveries are "meager," "paltry," and "insignificant," not "sizeable" or "excellent." In turn, Defendant's counsel acknowledged it was no more than a "cost of defense" settlement. The Court recognizes that often in cases involving small monetary recoveries based on the number of class members and lack of significant monetary harm, the real value in the settlement is non-monetary relief, specifically, an agreement by the Defendant to modify its behavior. Here, again, there is no such agreement on non-monetary consideration and, according to Defendant's counsel at oral argument, since the filing of the first case in 2023, there has been no change in behavior.

Notwithstanding this obvious lack of success, Plaintiffs' counsel seeks to justify their full "one-third" fee request based on their "good faith" in pursuing these cases. Yet, the relevant factor is success, not merely satisfaction of Rule 11. "Good faith" is a threshold requirement for filing and maintaining an action, not for the recovery of substantial attorney's fees, here totaling half a million dollars. Otherwise, attorney's fees would be recoverable in every case, regardless of the level of success. A "contingent" fee is meant to be just that, "contingent" on success (which is questionable here).

Plaintiffs also argue that their fee request is a typical "percentage recovery" of approximately

one-third and less than the "lodestar" calculation. The Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorneys' fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). The Court will apply the lodestar method. While there is a "settlement fund" in this case from which attorney's fees could be calculated, the fact that it is a "cost of defense" settlement in which there is little monetary or other benefits to class members suggests that the lodestar method is more appropriate to ensure that Plaintiffs' counsel are not compensated beyond the true level of success.

To determine the lodestar, the Court multiplies the number of reasonable hours expended times a reasonable rate. To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. *See Goodlaxson v. Mayor & City Council of Baltimore*, 776 F. Supp. 3d 311, 321–22 (D. Md. 2025). Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff. *Lumber Liquidators*, 27 F.4th at 303 (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). Again, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation and internal quotation marks omitted).

Plaintiffs calculate their attorney's fee lodestar to be $551,071 based on a total of 983 hours at the usual and customary hourly rates charged for their attorneys' services nationwide in contingent billable matters. *See* Doc. No. 50 at 3-4. The Court finds that the hourly rates used in the calculation to be reasonable, but has no way to evaluate the total number of hours because those details have not been provided to the Court. However, what the Court does know is that the total number of hours in

the lodestar calculation includes all the time that Plaintiffs' counsel spent in litigating all four related cases, even *Alexander* and *Polcare*, two cases that are not included in the settlement. In other words, Plaintiffs' counsel asks to be compensated for filing additional, unsuccessful litigation in different states that was separately resolved outside the Parties' settlement. The Court declines that invitation, for which it can find no support.[3]

Accordingly, in the exercise of its discretion and in the absence of detailed time records from which it could calculate the number of hours spent on the *Alexander* and *Polcare* cases, the Court will reduce the amount of the lodestar amount by one-half, to $275,536, and grant the motion for attorney's fees in that amount. This is a generous calculation and award because not only does it assume that one-quarter of the legal time was spent on this case, which did not progress as far as the other matters, it does not further reduce the lodestar to account for the absence of success in the settlement,[4] as discussed at length above.[5]

---

[3] Plaintiffs cite *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), for the proposition that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" and that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *See* Doc. No. 55 at ¶ 36. This is inapposite. *Hensley* relates to the circumstance where a plaintiff raises "alternative legal grounds" for recovery in a single case, but doesn't prevail on all of them. *Id*. That issue is not presented here. Putting aside the fact that Plaintiffs' counsel has not "obtained excellent results," *Hensley* did not address and does not hold that a plaintiff's counsel in one case can be compensated for losing claims in another case, which has already been separately settled.

[4] Plaintiffs contend that the settlement of the nationwide class for the maximum statutory recovery necessarily means the settlement is an "excellent" result. While that may be true in some circumstances, it is not here. Plaintiffs candidly admit that the various cases were not filed to recover only (or even primarily) on the FDCPA nationwide claim in which recovery was limited, but rather to seek the higher recoveries permitted under various state laws. Otherwise, why would Plaintiffs file duplicative "nationwide" class actions, in which the subsequent Plaintiffs were already putative class members in *Dantzler*. Rather, most fairly understood, the "maximum" amount paid to the nationwide class in the settlement is simply a narrative "allocation" of the total agreed settlement amount (which as noted amounts only to a "cost of defense" settlement with no change in behavior required).

[5] Had the Court not reduced the lodestar to account for the *Alexander* and *Polcare* fees, it would need to substantially reduce the proposed fees to reflect the lack of success. *See Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 627, 629–30 (4th Cir.1995) (concluding that district court did not abuse its discretion in awarding only $500 in attorneys' fees pursuant to a mandatory fee provision—in contrast to the plaintiff's request for almost $9,800—when the plaintiff received only $50 in statutory damages).

15

Class Counsel has also requested reimbursement of expenses of $8,003.82 for filing the complaints, travel, and mediation costs. The Court finds that request is reasonable and will add those expenses to Plaintiffs' counsel's fees.

Finally, Plaintiffs request that the Court order payment from the Settlement Fund of an incentive or service award of $5,000 each to the two named Plaintiffs. "Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry,* 807 F.3d at 613 (quotation marks and citations omitted). "To determine whether an incentive payment is warranted, the court should consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Decohen v. Abbasi*, LLC, 299 F.R.D. 469, 483 (D. Md. 2014) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). The Court concludes that the requested service awards are reasonable in light of these factors and will be approved.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Court finds that it has personal jurisdiction over the Parties and all Settlement Class Members as well as subject matter jurisdiction to approve the Settlement Agreement, including all attached exhibits, and to enter this Order.

2. The Settlement Class, including the FDCPA, California, and North Carolina Classes, preliminarily certified by the Court on February 4, 2026, are hereby finally certified for settlement purposes only, as it fully satisfies all the applicable requirements of Rule 23 and due process.

a.    As set forth in the supplemental declaration of Ryan Aldridge of Eisner, the Settlement Administrator, there were timely received requests for exclusion covering 22 Class Loans. Those 22 timely and validly submitted requests for exclusion are reflected in Exhibit D to the Aldridge declaration (Doc. No. 53). The Court approves each of the 22 timely and validly submitted requests for exclusion that are reflected in Exhibit D to the Aldridge declaration, and thereby excludes from the Settlement Class each of the 22 Class Loans and all Potential Settlement Class Members covered by those exclusion requests.

b.    One request for exclusion was both post-marked and received after the Objection/Exclusion Deadline. That late request for exclusion is also reflected in Exhibit D to the Aldridge declaration. *See* Doc. No. 53 at ¶ 18, Ex. D. Without objection from the Parties, the Court will nevertheless approve the belated request and exclude that person from the Settlement Class.

3.    The Court finds and concludes that Plaintiffs and Class Counsel have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

4.    The Class Notice implemented pursuant to the Agreement (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object or exclude themselves from the Agreement and proposed Settlement; and to appear at the Fairness Hearing; (c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of the Federal Rules of

17

Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.

5. The Agreement and the proposed Settlement are approved as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members, and the Parties and their counsel are directed to implement and consummate the Agreement according to its terms and provisions, except as not otherwise disapproved by this Order.

6. The Agreement is binding upon, and shall have res judicata and collateral estoppel effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and the Settlement Class Members.

7. The Release set forth in Section 3 of the Agreement is incorporated herein and made effective as of the Final Settlement Date and the Released Persons are forever discharged as set forth in the Agreement.

8. Settlement Class Members are permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in, (as class members or otherwise) any lawsuit or other action in any jurisdiction based on the Released Claims. However, Settlement Class Members are not precluded from addressing, contacting, dealing with, or complying with requests or inquiries from any governmental authorities relating to the issues raised in this Settlement.

9. The Court retains continuing and exclusive jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validation of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; and all other matters pertaining to the Settlement or its implementation and enforcement.

10. Neither this Final Order and Judgment, nor the Settlement, nor any other document

18

referred to herein, nor any action taken to carry out this Final Order and Judgment, is, may be construed as, or may be used as an admission or concession by or against PHH or the Released Persons of the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability. PHH continues to deny that the Action or the Related Case meets the requisites for class certification under Rule 23 for any purpose other than settlement, and nothing herein shall be construed otherwise. Entering into or carrying out the Settlement, and any negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to PHH's denials or defenses, and shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the settlement and this Final Order and Judgment; provided, however, that the settlement and Final Order and Judgment may be filed in any action brought against or by PH or the Released Persons to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

11. This Final Order and Judgment shall become null and void and shall be without prejudice to the rights of the parties and Settlement Class Members, all of whom shall be restored to their respective positions existing immediately before the Court entered its February 4, 2026, Preliminary Approval Order, if: (a) the Settlement does not reach the Final Settlement Date as defined in Agreement; (b) the Settlement is terminated by a Party in accordance with its provisions; or (c) the Settlement does not become legally effective for any other reason.

12. The Action is dismissed on the merits and with prejudice (including all individual claims and class action claims presented thereby) and shall be final and entered forthwith, without fees or costs to any Person or Party except as provided in the Agreement or in this Order.

13.     Class Counsel and Plaintiff Dantzler are hereby ORDERED to file a stipulation of dismissal with prejudice of the California Case within seven (7) days of the Final Settlement Date that is jointly signed by all parties to the California Case.

14.     Without affecting the finality of the Final Order and Judgment for purposes of appeal, the Court retains jurisdiction as to the administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Order and Judgment, and for any other necessary purpose.

15.     Pursuant to Fed. R. Civ. P. 23(h), the Court hereby awards Class Counsel for the Settlement Class Attorneys' Fees and Expenses in the amount of $283,539.82, comprising $275,536 in attorneys' fees and $8,003.82 in expenses. The Court also awards Plaintiffs $5,000 each in Service Awards, for a total of $10,000. The Attorneys' Fees and Expenses and Service Awards shall be paid on an equal basis from the Settlement Funds, with $97,846.61 in total Attorneys' Fees and Expenses and Service Awards being paid from each of the three Settlement Funds.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 18, 2026

Kenneth D. Bell
United States District Judge

20